UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE GREENE,

      Plaintiff,

v.                                     Case No: 8:25-cv-270-CEH-LSG

ERIC HARPER, *et al.*,

      Defendants.

_____

## ORDER

This cause comes before the Court on the Motion to Dismiss, Motion to Strike, Motion for More Definite Statement, and Incorporated Memorandum of Law filed by Defendants Eric Harper, Tom Connor, Sammy L. Taylor, the City of Lakeland, and Shawn Sherrouse. Doc. 50. In the motion, Defendants request dismissal of Counts IV and V[1] because Plaintiff failed to plausibly plead that a custom or policy was the moving force behind the alleged constitutional violation. *Id.* at 7-22. Defendants also request dismissal of Counts VII[2] and VIII[3] based on sovereign immunity. *Id.* at 22-23.

---

[1] It appears Plaintiff mislabeled multiple counts in the Second Amended Complaint. Doc. 43. This Court refers to the pertinent counts of the Second Amended Complaint based on the order in which they appear in Plaintiff's Second Amended Complaint: Count IV – Supervisory Liability & Policymaker Liability against Taylor and Sherrouse (Doc. 43 ¶¶ 93-115); Count V – *Monell* claim against the City of Lakeland (Doc. 43 ¶¶ 116-154); Count VII – Negligence claim against the City of Lakeland (Doc. 43 ¶¶ 160-168); Count VIII – Claim of Diane Greene as Personal Representative of the Estate of Alex Greene (Doc. 43 ¶ 169).
[2] *See* n. 1.
[3] *See* n. 1.

1

As a last resort, Defendants submit that the entire Second Amended Complaint should be dismissed because it is comprised of vague, redundant, and conclusory allegations. *Id.* at 23-25.

The Court, having considered the motion and being fully advised in the premises, will grant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Plaintiff will be given one final opportunity to amend the Second Amended Complaint.

## I.  BACKGROUND[4]

On February 6, 2023, Alex Greene ("Greene") was getting into a Chevy truck when a silver Camry driven by an ATF agent pulled up behind Greene and almost crashed into the truck Greene was driving. Doc. 43 ¶ 10. The silver Camry was not marked as a law enforcement vehicle, and the agent did not turn on his lights and sirens. *Id.* ¶ 11. The ATF agent stated he was there to execute a warrant on Greene for burglary. *Id.* ¶ 12. Greene drove away from the ATF agent, and a chase ensued. *Id.* ¶ 15. Defendant Captain Eric Harper ("Harper") also joined the chase while driving an unmarked truck, and Lieutenant Tom Connor ("Connor") was in the passenger seat of Harper's unmarked truck. *Id.* ¶ 16. The ATF agent abandoned the chase and announced via the radio that he was doing so. *Id.* ¶ 17. Also, an ATF pursuit supervisor

---

[4] Unless otherwise stated, the following statement of facts is derived from the Second Amended Complaint (Doc. 43), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

communicated to ATF via radio not to pursue Greene because Greene's phone was being tracked. *Id.* ¶ 18. Harper and Connor were monitoring the radio on which the ATF announcements were made. *Id.* ¶¶ 17,18.

Ultimately, Harper and Connor engaged in a high-speed chase for several miles through multiple jurisdictions without warning law enforcement in those jurisdictions. *Id.* ¶ 25, 26. Also, Harper and Connor purposefully did not radio-in the chase because they knew they were violating LPD protocol by pursuing Greene. *Id.* ¶ 30. Further, as required by the established rules of engagement, Harper and Connor did not request a pursuit supervisor. *Id.* Instead, Connor expressed that because he did not have a radio signal at the time, he and Harper decided that Connor would be the "passenger seat" pursuit supervisor. *Id.* During the pursuit, Harper rammed his truck at a high rate of speed into the back of the truck Greene was driving. *Id.* ¶ 31. Greene then jumped out of the vehicle and ran. *Id.* ¶ 32. Harper chased him on foot. *Id.* ¶ 32. Greene ran into a parking lot and jumped into the driver seat of an open car and closed the door. *Id.* ¶ 33. As Greene put the car into drive, Harper ran up to the side of the vehicle and fatally shot Greene five times. *Id.* ¶ 34, 35.

Harper, who was a member of the Lakeland Police Department's SWAT team and Street Crimes Unit, was the lead investigator of a mass shooting that had occurred just days prior. *Id.* ¶ 19. Because Harper was a member of the SWAT team and Street Crimes Unit, he was aware of the Lakeland Police Department's ("LPD") custom of allowing officers to use excessive force and to engage in chases. *Id.* ¶ 20. Therefore,

Harper violated protocols that were established to ensure public safety, and instead, he created a plan to exclude outside law enforcement. *Id.* Specifically, Harper misled the Polk County Sherrif's Office ("PCSO") regarding the meeting time with the FBI and ATF to discuss the investigation of the mass shooting case. *Id.* ¶ 21, 24. Harper also resisted the PCSO's attempts to provide assistance in the investigation. *Id.* ¶ 22. Moreover, Harper lacked jurisdictional authority outside of Lakeland, yet he intentionally did not notify the PCSO that he was conducting an operation outside of Lakeland. *Id.* ¶ 24.

Plaintiff alleges that City Manager Shawn Sherrouse ("Sherrouse") and Chief Ammy Taylor ("Taylor") "directly participated" in the deprivation of Plaintiff's rights. Doc. 43 ¶ 100. Specifically, Taylor allowed Harper and other SWAT and Street Crimes officers "to operate as they wished." *Id.* Also, Plaintiff asserts that Taylor directly participated in the violation of Plaintiff's constitutional rights by submitting false information to the media and concealing evidence related to the subject incident. *Id.* Additionally, Plaintiff asserts that Sherrouse and Taylor created an atmosphere that gave rise to Plaintiff's death. *Id.*

Plaintiff contends that the Lakeland Police Department ("LPD"), Taylor, and Sherrouse maintained a custom and policy that encouraged constitutional violations. *See* Doc. 43 ¶¶ 64, 97, 101-103, 106-109, 110-112, 114. For instance, Taylor was deliberately indifferent to the LPD's long-standing practice and custom of not appropriately investigating or disciplining misconduct and ignoring written policies about excessive force. Doc. 43 ¶ 64 (c), (e). Additionally, Plaintiff alleges that the

LPD's maintenance of flawed policies and customs, and/or lack of a sufficient policy or custom, led to a violation of Plaintiff's rights. *See* Doc. 43 ¶¶ 116, 134, 138, 140, 147, 149-153.

Also, Plaintiff offers the LPD's Street Crimes Unit as an example of systematic, unconstitutional use of force (Doc. 43 ¶¶ 111, 112). Plaintiff also points to the LPD's SWAT team as another illustration of the LPD's custom of permitting constitutional violations. Doc. 43 ¶ 110. Specifically, Plaintiff alleges the SWAT team enjoyed special protection from scrutiny and claims the SWAT team's privileged status resulted in a historical pattern of constitutional violations. Doc. 43 ¶ 110. Plaintiff then goes on to describe systemic problems with the LPD's SWAT, STAT, and Street Crimes departments. Doc. 43 ¶¶ 117, 118, 119-123, 130-133, 143-145, 154. Plaintiff also alleges that LPD officers violated body-worn camera policies. *See* Doc. 43 ¶¶ 124-128.

Next, Plaintiff alleges that because Taylor and Sherrouse were aware of Defendant Harper's misconduct but still allowed Harper to work as an officer, Taylor and Sherrouse were deliberately indifferent to the misconduct, and therefore, they caused the violation of Plaintiff's constitutional rights. *Id.* ¶¶ 111-113.

Plaintiff submits the multiple violations in Harper's disciplinary record as evidence that Taylor and Sherrouse knew and were deliberately indifferent to Harper's malfeasance. Doc. 43 ¶¶ 111-113. For instance, Plaintiff enumerates the following demerits from Harper's personnel file: "job knowledge and performance," "conflict of interest mis[use] of official position," "use and care of department property,"

"limitations on pursuit," "courtesy," "vehicle operation," "general arrest procedures," and "neglect of duty." Doc. 43 ¶ 111.

Further, Plaintiff alleges Taylor and Sherrouse were deliberately indifferent to the need to provide LPD officers "with more or better training" regarding constitutional safeguards, and they failed to properly train LPD officers. Doc. 43 ¶¶ 104, 109. Plaintiff concludes that the LPD's policy and custom of inadequate training led to constitutional violations. *See* Doc. 43 ¶¶ 136-139. Furthermore, Plaintiff indicates that Sherrouse and Taylor "ignored the pattern and history of constitutional abuses committed by the police officers under their supervision" and knew about the "widespread abuse." Doc. 43 ¶¶ 98, 100.

Moreover, Plaintiff specifies twelve areas where Taylor and Sherrouse failed to implement a supervisory procedure or policy, to wit: vigilance for uncovering and eradicating constitutional violations; procedures whereby members of the public who have experienced constitutional police violations are encouraged to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints and their respective outcomes; procedures for the objective investigations, analyses, and corrective action of all claims and complaints; procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached; procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations; procedures requiring training and remedial retraining in the Fourteenth Amendment safeguards and, the need for reporting; practices and procedures for officer conduct which places the focus on the

truth-seeking process and on eliminating police misconduct rather than protecting it from prosecution, punishment, or discipline; procedures for the complete statistical analysis of police complaints; procedures which permit the prompt identification and retrieval of all complaints, outcomes, and evidence, on an individual officer basis; procedures regarding the handling of domestic property disputes; policies identifying and requiring the informing of domestic complainants of the proper utilization of the legal remedies available for domestic property dispute resolution.  Doc. 43 ¶ 105.

Next, Plaintiff calls out LPD's lackluster investigation of citizen complaints. Doc. 43 ¶¶ 135,148.

Plaintiff submits the following as evidence of misconduct by LPD: body-worn camera violations, an excessive speeding incident, a shoplifting arrest, a department-wide sex scandal, drug abuse, and multiple allegations of excessive force that occurred after the incident at hand or do not specify a date. Doc. 43 ¶¶ 125-126, 129, 141, 143.

Plaintiff alleges the following incidents as evidence of the LPD's use of excessive force: the 1987 incident involving Officer Richard Kachadurian, the 1997 incident involving Officer Bob Zaidan, the 2018 shooting of Michael Jerome Taylor, the 2021 incident regarding Michael Cochran, the 2022 incident regarding Eric Kent, the 2022 arrest of Antwan Glover, the 2023 incident involving Antwan Glover, the 2023 incidents regarding Evans and Davis, Jr., and the 2024 incident involving Almonte Landy. Doc. 43 ¶¶ 141, 143.

By incorporating paragraphs 20 through 24 into Count VIII, Plaintiff alleges that Officer Harper: devised a plan to "box out" other law enforcement agencies;

7

violated established protocols put in place to ensure public safety; misled the Polk County Sheriff's Office ("PCSO") regarding the meeting time to discuss the mass shooting case; actively resisted the PCSO's attempts to render assistance in the investigation; purposefully did not notify the PCSO that he was conducting an operation in a municipality outside his jurisdiction of Lakeland; and pursued a high-speed chase outside of his jurisdiction without alerting pertinent, local law enforcement. Doc. 43 ¶¶ 20-24, 160. Further, Plaintiff alleges Officer Harper committed second degree murder and devised a plan to conceal his criminal conduct. Doc. 43 ¶¶ 36,169.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

8

### III.    DISCUSSION

In the Second Amended Complaint, Plaintiff sues Defendants Harper, Connor, Taylor, the City of Lakeland, and Sherrouse alleging federal and state law claims. Doc. 43. Defendants move to dismiss Counts IV and V because Plaintiff failed to properly plead a custom or practice that motivated the Constitutional deprivation and Defendants move to dismiss Counts VII and VIII arguing the claims are barred by sovereign immunity. *Id.* Defendants also move to dismiss the entire Second Amended Complaint because it is a shotgun pleading. *Id.* The Court will now address each count in turn before analyzing whether the Second Amended Complaint is an impermissible shotgun pleading.

**<u>Count IV – Supervisory Liability & Policymaker Liability Against Chief Taylor and City Manager Sherrouse Individually</u>**

In Count IV, Plaintiff alleges Defendant Chief Sam Taylor ("Taylor") and Defendant City Manager Shawn Sherrouse ("Sherrouse") were on actual or constructive notice that the lack of supervision and training was certain to result in a violation of constitutional rights. Doc. 43 ¶ 94. Plaintiff further alleges Taylor and Sherrouse implemented policies and practices that created an unreasonable risk of constitutional violations, and their failure to change the policies was the motivating factor and direct cause of the violations of Plaintiff's constitutional rights. Doc. 43 ¶ 97. Plaintiff also asserts Sherrouse and Taylor ignored the pattern and history of constitutional abuses committed by police officers under their supervision. Doc. 43 ¶

98; Doc. 53 at 2. Defendants retort Count IV should be dismissed because Plaintiff failed to plausibly plead a custom or policy of Taylor or Sherrouse that was the moving force behind the alleged constitutional violation. Doc. 50 at 7.

The standard by which a supervisor is held liable in his individual capacity for the actions of his subordinate is extremely rigorous. *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025). For a supervising official to be liable for an alleged constitutional violation, a plaintiff must show the supervisor personally participated in the violation or the supervisor's actions caused the alleged constitutional deprivation. *Id.* One way a plaintiff can show the supervisor caused the constitutional violation is by demonstrating the supervisor's custom or policy reflected a deliberate indifference to the plaintiff's constitutional rights. *Id.* This requires the supervisor to have a subjective awareness of a substantial risk of serious harm to the plaintiff. *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025); *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013); *see Wade v. McDade*, 106 F.4th 1251, 1253, 1262 (11th Cir. 2024) (en banc). Alternatively, a plaintiff can also show that the *absence* of a policy caused the violation of constitutional rights. *Piazza v. Jefferson County, Alabama,* 923 F.3d 947 (11th Cir., 2019); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991). Whether a plaintiff claims that the existence or the absence of a policy caused a constitutional deprivation, the plaintiff must point to multiple incidents or reports of prior malfeasance. *Piazza v. Jefferson County, Alabama,* 923 F.3d 947 (11th Cir., 2019); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991). A plaintiff can also establish that a supervisor caused the

constitutional deprivation by showing that a history of widespread abuse put the supervisor on notice of the need to correct the alleged deprivation, yet the supervisor failed to do so. *Christmas v. Harris Cnty., Georgia,* 51 F.4th 1348, 1355 (11th Cir. 2022). Isolated occurrences of constitutional violations are not adequate to put a supervisor on notice; instead, the violations that constitute widespread abuse must be obvious, flagrant, rampant, and of continued duration. *Christmas v. Harris Cnty., Georgia,* 51 F.4th 1348, 1355 (11th Cir. 2022).

*Personal Participation by Sherrouse and Taylor*

When a plaintiff does not allege any facts to show that the supervisor did anything more than direct the actions of subordinate law enforcement officers, then the plaintiff has not shown that the supervisor personally participated in the alleged constitutional deprivation. *See Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir. 2003). Here, Plaintiff summarily concludes that Sherrouse and Taylor "directly participateD" in the unconstitutional conduct. Doc. 43 ¶ 100. To support his assertion, Plaintiff indicates that Taylor allowed Harper and other SWAT and Street Crimes officers "to operate as they wished." *Id.* However, such a conclusory statement is merely a commentary concluding that Taylor did not correctly direct his subordinate officers, but it is not a sufficiently pled fact that specifies Taylor's direct involvement in the incident at issue. Also, Plaintiff's assertion that Taylor directly participated in the constitutional violation by submitting false information to the media and concealing evidence is merely an accusation that Taylor executed a public relations strategy regarding the incident. *See* Doc. 43 ¶ 100.  Such an assertion inherently is not a factual

11

statement explaining Taylor's direct involvement because it concerns *post hoc* actions that allegedly occurred after the subject incident, as opposed to Taylor's direct involvement in the incident. Lastly, Plaintiff's claim that Sherrouse and Taylor created an atmosphere that gave rise to Plaintiff's death is conclusory, as it offers no specific facts detailing how or when Sherrouse and Taylor directly participated in a deprivation of Plaintiff's rights. *See* Doc. 43 ¶ 100. Plaintiff has offered no facts to show that Taylor or Sherrouse was directly involved in the subject violation of Plaintiff's constitutional rights.

The analysis now moves to Plaintiff's allegation that the actions of Taylor and Sherrouse caused the alleged constitutional violations committed against Plaintiff.

### *Custom or Policy Analysis*

To prove that a supervisor caused the constitutional violation, a plaintiff must show the custom or policy was so longstanding and widespread that it can be understood that the policymakers implicitly authorized the misconduct because they were aware of the problem but failed to act. *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025). A single instance of a constitutional violation is insufficient; the plaintiff must show that the supervisor knew about multiple incidents of prior misconduct. *Id.; See also Piazza v. Jefferson County, Alabama,* 923 F.3d 947, 957 (11th Cir. 2019). Here, Plaintiff fails to present any facts to show that a custom or policy of unconstitutional conduct was so longstanding and widespread that it was implicitly authorized by Taylor and Sherrouse. Instead, Plaintiff offers a plethora of conclusory statements that accuse the LPD, Taylor, and Sherrouse of maintaining a custom and policy that

12

encouraged constitutional violations. *See* Doc. 43 ¶¶ 64, 97, 101-103, 106-109, 110-112, 114.

For instance, Plaintiff alleges Taylor was deliberately indifferent to the LPD's long-standing practice and custom of not appropriately investigating or disciplining misconduct and ignoring written policies about excessive force, but Plaintiff fails to offer specific instances showing when and how the department did not appropriately investigate or discipline an officer regarding a constitutional violation, or when and how an officer ignored written policies about excessive use of force. Doc. 43 ¶ 64 (c), (e). Also, Plaintiff offers the LPD's Street Crimes Unit as an example of systematic, unconstitutional use of force (Doc. 43 ¶¶ 111, 112), but Plaintiff fails to allege specific occurrences where the Street Crimes Unit used unconstitutional excessive force. Plaintiff also points to the LPD's SWAT team as another illustration of the LPD's custom of permitting constitutional violations. Doc. 43 ¶ 110. Specifically, Plaintiff alleges the SWAT team enjoyed special protection from scrutiny and claims the SWAT team's privileged status resulted in a historical pattern of constitutional violations, but Plaintiff fails to articulate precise instances of the SWAT team's constitutional violations. *See* Doc. 43 ¶ 110.

Next, Plaintiff alleges that because Taylor and Sherrouse were aware of Defendant Harper's misconduct but still allowed Harper to work as an officer, Taylor and Sherrouse were deliberately indifferent to the misconduct, and therefore, they caused the violation of Plaintiff's constitutional rights. *Id.* ¶¶ 111-113. However, this argument fails for two reasons: (1) Plaintiff has not sufficiently alleged that Taylor and

13

Sherrouse had knowledge of Taylor's misconduct, and (2) the misconduct that Plaintiff offers is irrelevant to constitutional violations.

First, Plaintiff fails to provide any facts to show that Taylor and Sherrouse knew of Harper's alleged bad behavior. Instead, Plaintiff cites to multiple violations in Harper's disciplinary record, then she jumps to the conclusory assertion that Taylor and Sherrouse knew and were deliberately indifferent to Harper's malfeasance. Doc. 43 ¶¶ 111-113. However, Plaintiff neglects to allege that Taylor and Sherrouse directly supervised Harper; that Harper's misconduct was directly reported to Taylor and Sherrouse; or that Taylor and Sherrouse would have reviewed or otherwise had knowledge about Harper's personnel file. *See Bridges v. Poe,* 155 F.4th 1302, 1315 (11th Cir. 2025) (finding no custom or policy that resulted in deliberate indifference to constitutional rights where there were no facts to show that the supervisor was part of the jail's day-to-day management or that the supervisor received any in-person reports about the constitutional violations).

Second, the documented misconduct that Plaintiff proffers is vague and not connected to a constitutional violation committed by Harper or any other LPD officer. Although Plaintiff enumerates violations committed by Harper, he does not specify the exact conduct or constitutional deprivation underlying those violations. Instead, Plaintiff merely lists topical summaries that describe the reprimand, such as, "job knowledge and performance," "conflict of interest mis[use] of official position," "use and care of department property," limitations on pursuit," "courtesy," "vehicle operation," "general arrest procedures," and "neglect of duty." Doc. 43 ¶ 111. Such

vague descriptors are insufficient to allege a custom or policy that reflect a deliberate indifference of Plaintiff's constitutional rights, and Plaintiff has failed to adequately allege that Taylor and Sherrouse were subjectively aware of a substantial risk of serious harm to Plaintiff.

A law enforcement agency's failure to adequately train its officers may constitute a "policy" that gives rise to governmental liability. *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991). Under appropriate circumstances, such liability may be imposed based on a single decision made by policymakers. *Id.* In *Rivas*, the Eleventh Circuit upheld the district court's finding that the sheriff was liable for plaintiff's unconstitutional detention because the record was clear that the sheriff failed to establish procedures and policies for the correct identification of arrestees, warrantless searches, and computer checks for information. *Id.*

In the instant case, Plaintiff failed to adequately plead that LPD's failure to adequately train its officers gave rise to a policy that imputed liability on Taylor or Sherrouse. Specifically, Plaintiff alleges Taylor and Sherrouse were deliberately indifferent to the need to provide LPD officers "with more or better training" regarding constitutional safeguards, and they failed to properly train LPD officers. Doc. 43 ¶¶ 104, 109. However, Plaintiff has not provided any specific, fact-based instances that show how Taylor or Sherrouse's failure to implement a specific training led to a violation of Plaintiff's constitutional rights. Therefore, Plaintiff's "failure to train" assertions are merely conclusory allegations.

*Absence of Policy Analysis*

A plaintiff can also show that the *absence* of a policy caused the violation of constitutional rights. *Piazza v. Jefferson County, Alabama,* 923 F.3d 947 (11th Cir. 2019); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991). Whether a plaintiff claims that the existence or the absence of a policy caused a constitutional deprivation, the plaintiff must point to multiple incidents or reports of prior malfeasance. *Piazza v. Jefferson County, Alabama,* 923 F.3d 947 (11th Cir. 2019); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991).

Here, Plaintiff identifies twelve areas where Taylor and Sherrouse failed to implement a supervisory procedure or policy, namely: vigilance for uncovering and eradicating constitutional violations; procedures whereby members of the public who have experienced constitutional police violations are encouraged to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints and their respective outcomes;  procedures for the objective investigations, analyses, and corrective action of all claims and complaints; procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached; procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations; procedures requiring training and remedial retraining in the Fourteenth Amendment safeguards and, the need for reporting; practices and procedures for officer conduct which places the focus on the truth-seeking process and on eliminating police misconduct rather than protecting it from prosecution, punishment, or discipline; procedures for the complete statistical

analysis of police complaints; procedures which permit the prompt identification and retrieval of all complaints, outcomes, and evidence, on an individual officer basis; procedures regarding the handling of domestic property disputes; policies identifying and requiring the informing of domestic complainants of the proper utilization of the legal remedies available for domestic property dispute resolution. Doc. 43 ¶ 105.

Although Plaintiff has made sweeping assertions about the lack of established policy in the above-listed areas, Plaintiff fails to identify one incident or report, much less, as required by law, *multiple* incidents or reports, of prior misconduct by the LPD in any of the aforementioned areas. Therefore, Plaintiff has not adequately pled that Taylor's or Sherrouse's failure to implement a certain policy caused a deprivation of Plaintiff's constitutional rights.

### *History of Widespread Abuse Analysis*

A plaintiff can also establish that a supervisor caused the constitutional deprivation by showing that a history of widespread abuse put the supervisor on notice of the need to correct the alleged deprivation, yet the supervisor failed to do so. *Christmas v. Harris Cnty., Georgia,* 51 F.4th 1348, 1355 (11th Cir. 2022).

Here, Plaintiff makes conclusory statements that Sherrouse and Taylor "ignored the pattern and history of constitutional abuses committed by the police officers under their supervision" and knew about the "widespread abuse." Doc. 43 ¶¶ 98, 100. However, Plaintiff does not plead any specific facts to show that the constitutional deprivations were obvious, flagrant, rampant, and continued. *See Christmas v. Harris Cnty., Georgia,* 51 F.4th 1348, 1355 (11th Cir. 2022) (An isolated instance of a

17

constitutional violation does not put a supervisor on notice; instead, the violations that constitute widespread abuse must be obvious, flagrant, rampant, and of continued duration.). Therefore, Plaintiff has failed to sufficiently allege that Sherrouse and Taylor were on notice of the need to correct constitutional deprivations and failed to do so. Count IV is due to be dismissed because Plaintiff has failed to allege facts to demonstrate that a custom or policy of Taylor or Sherrouse caused Plaintiff's alleged constitutional violation.

### Count V – *Monell* Claim, Municipal Liability against the City of Lakeland

In Count V, Plaintiff alleges Defendants City of Lakeland, Taylor, and Sherrouse failed to develop policies, or developed and maintained policies and/or customs, that exhibited a deliberate indifference to the constitutional rights of Lakeland's citizens. Doc. 43 ¶ 116. Plaintiff further asserts that city policymakers were on notice for decades that the lack of training and supervision was certain to result in a violation of constitutional rights. *Id.* Defendants respond that Count V should be dismissed because Plaintiff has failed to convincingly plead that a custom or policy was the moving force behind the City's alleged constitutional deprivations. Doc. 50 at 11.

A municipality cannot be held liable under 42 U.S.C. §1983 on a theory of vicarious liability for the actions committed by an employee. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690 (1978); *see also Andre v. Clayton Cnty., Georgia,* 148 F.4th 1282, 1300 (11th Cir. 2025); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1297 (11th Cir. 2024). Instead, to plead a *Monell* claim, a plaintiff must

18

allege: 1) his constitutional rights were violated; 2) the municipality had a custom or policy that constituted deliberate indifference to that right; and 3) the custom or policy caused the violation. *Andre v. Clayton County*, Georgia, 148 F.4th 1282, 1300 (11th Cir. 2025). Moreover, for the custom or policy to be actionable, the custom or policy must be so well-settled, pervasive, persistent, and widespread that the county had either actual or constructive knowledge of it. *Smothers v. Childers*, 159 F.4th 922, 931 (11th Cir. 2025).   Therefore, random acts or isolated incidents are insufficient to allege a custom or policy. *Id.* Moreover, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.*

In the instant case, Plaintiff has failed to sufficiently assert specific facts establishing that the City of Lakeland had a custom or policy that constituted a deliberate indifference to Plaintiff's constitutional rights. Instead, Plaintiff has submitted conclusory, unsubstantiated statements. For instance, Plaintiff accuses the LPD of maintaining flawed policies and customs, or lacking a sufficient policy or custom, that led to a violation of Plaintiff's rights. *See* Doc. 43 ¶¶ 116, 134, 138, 140, 147, 149-153. Despite such overarching allegations, Plaintiff has not substantiated such statements with specific occurrences.   Plaintiff also describes systemic problems with the SWAT, STAT, and Street Crimes departments. Doc. 43 ¶¶ 117, 118, 119-123, 130-133, 143-145, 154. However, Plaintiff has not detailed instances where the aforementioned teams repeatedly or consistently violated a citizen's constitutional rights. Plaintiff also calls out LPD's lackluster investigation of citizen complaints. Doc. 43 ¶¶ 135,148. Yet Plaintiff has not provided any specific occurrences to allege that

19

improperly investigated complaints resulted in an infringement of constitutional rights. Doc. 43 ¶¶ 135,148. Next, Plaintiff alleges that LPD officers violated body-worn camera policies, but there is no concomitant allegation to specify how LPD officers consistently violated body-worn camera policies in a manner that led to a deliberate indifference to constitutional rights. *See* Doc. 43 ¶¶ 124-128. Also, Plaintiff asserts the LPD's policy and custom of inadequate training led to constitutional violations, but Plaintiff has not asserted any instances to show that a lack of training consistently led to LPD officers depriving a citizen of their constitutional rights. *See* Doc. 43 ¶¶ 136-139.

Plaintiff also offers a series of unscrupulous actions committed by LPD officers. Doc. 43 ¶¶ 125-126, 129, 141, 143. Specifically, Plaintiff submitted the following as evidence of LPD misconduct: body-worn camera violations, an excessive speeding incident, a shoplifting arrest, a department-wide sex scandal, drug abuse, and multiple allegations of excessive force that occurred after the incident at hand or which do not specify a date. *Id.* However, such random bad acts are too dissimilar and unrelated to Plaintiff's incident to allege a custom or policy. *See Craig v. Floyd Cnty., Ga.,* 643 F.3d 1306, 1310 (11th Cir. 2011) (A pattern of similar constitutional violations is necessary.); *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1304 (11th Cir. 2025) (finding a plausibly-pled *Monell* custom or policy where the county's law enforcement had executed "hundreds" of the same type of unreasonable searches); *Smothers v. Childers*, 159 F.4th 922, 932 (11th Cir. 2025) (finding a plausible municipal policy

20

where several detainees had died, and the county jail had received several complaints that the same jail contractor failed to provide adequate medical care).

Moreover, many of the excessive force incidents that Plaintiff offers either occurred after the date of Plaintiff's incident, or it is not clear whether the incident occurred before LPD fatally shot Greene. Doc. 43 ¶¶ 141, 143 (i.e., the 2023 incident involving Antwan Glover, the 2023 incidents regarding Evans and Davis, Jr., and the 2024 incident involving Almonte Landy). In either event, the proffered alleged excessive force incidents did not put the City of Lakeland on notice of a custom or policy because Plaintiff did not allege that the incidents occurred before Harper fatally shot Greene.

Plaintiff does, however, allege a few excessive force incidents that occurred before the shooting in the case at hand. *See* Doc. 43 ¶¶ 141, 143 (i.e., the 2018 shooting of Michael Jerome Taylor, the 2022 incident regarding Eric Kent, the 2022 arrest of Antwan Glover, the 1987 incident involving Officer Richard Kachadurian, the 1997 incident involving Officer Bob Zaidan, and the 2021 incident regarding Michael Cochran). Nonetheless, the foregoing incidents are not sufficient to allege a policy or custom. First, in most of the incidents, Plaintiff did not articulate sufficient factual details for the Court to discern whether the described incidents are factually similar to the case at hand. Instead, Plaintiff only provided short descriptions of the incidents. *Id.*

Second, even if Plaintiff had identified a policy or custom of the City of Lakeland that demonstrated a deliberate indifference to Plaintiff's rights, Plaintiff has

not sufficiently alleged that the purported problematic policies or customs were the "moving force behind" the violation of Plaintiff's constitutional rights. *Smothers v. Childers*, 159 F.4th 922, 934 (11th Cir. 2025) (a plaintiff must show that through its deliberate conduct, the municipality was the "moving force behind" the injury alleged.)

In conclusion, the Second Amended Complaint fails to state a viable *Monell* claim because Plaintiff has not proffered sufficient facts to demonstrate the City of Lakeland's custom or policy caused Plaintiff's constitutional deprivation.

### Counts VII and VIII – State Negligence and Wrongful Death Claim

In Counts VII and VIII, Plaintiff claims the City of Lakeland is vicariously liable, pursuant to Florida's Wrongful Death Act, for the following negligent conduct that caused Alex Greene's death: the City of Lakeland's failure to properly train; the City of Lakeland's failure to properly supervise; and Defendants Harper and Connor's use of excessive force and failure to abide by established protocol. Doc. 43 ¶¶ 160-168. Defendants respond that pursuant to Florida Statute 768.28(9), sovereign immunity bars Counts VII and VIII because Plaintiff incorporates into those counts factual allegations that the city's employees acted in bad faith or with malicious purpose in a manner exhibiting a wanton and willful disregard of human rights, safety, or property. Doc. 50 at 23. Plaintiff responds that although Florida Statute 768.28(9)(a) bars claims against a municipality where the alleged conduct was committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human

22

rights, it does not preclude liability for ordinary negligence committed by a municipality's employee when he was acting within the course and scope of his employment. Doc. 53 at 4.

As an alternative basis to dismiss Count VII, Defendants contend it is legally impermissible to plead the negligent commission of an intentional tort, yet Count VII is a negligence claim factually based on the intentional tort of use of excessive force. Doc. 50 at 23. Plaintiff responds she is permitted to plead alternative theories of liability—both negligence and intentional torts—where the underlying facts could support either. Doc. 53 at 4. The Court will first address Defendants' argument that Count VII must be dismissed because Plaintiff improperly incorporated facts alleging excessive force—an intentional tort—into her negligence claim.

### *Count VII – Negligence Claim against the City of Lakeland*

Plaintiff pleads a negligence claim against the City of Lakeland by alleging the city breached its duty not to use excessive force when law enforcement crashed a moving vehicle into the automobile Alex Greene was driving and fatally shot him. Doc. 43 ¶ 161(a).

The Federal Rules of Civil Procedure permit a plaintiff to assert alternative and contradictory theories of liability. Fed. R. Civ. P. 8; *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014); *See also Brookhaven Landscape & Grading Co. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir.) (explaining that although litigants may pursue alternative theories, a party may not recover separately on an inconsistent theory when the theories are mutually exclusive or one theory precludes the other).

Further, Florida courts have consistently and unambiguously held that "it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort." *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (collecting cases). A plaintiff may bring a separate negligence claim against a police officer in tandem with a claim for excessive use of force, but the negligence component must be based on a distinct act of negligence that pertains to something other than the actual application of force during the arrest. *Id.*

Here, Plaintiff is permitted to plead alternative theories of liability; however, the SAC fails to do so. Instead, Count VII pleads only a negligent cause of action, but incorporates facts alleging the intentional tort of excessive force. Doc. 43 ¶¶ 160-168. If Plaintiff chooses to allege both negligence and excessive force regarding the subject shooting incident, she must clearly delineate what conduct she alleges to be negligent and what conduct she alleges was an application of excessive force, and the specified "negligent" conduct cannot be the same conduct that makes the excessive force claim. Moreover, Plaintiff must dedicate a specific count to each alternative theory of liability. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322-1323 (11th Cir. 2015) (explaining that a complaint wherein the claims are not separated into individual counts is an impermissible shotgun pleading). Because the SAC improperly conflates a negligence cause of action with an intentional tort claim, the Court will

24

dismiss Count VII as currently pled. Plaintiff may amend her SAC to properly plead alternative theories of liability.

*Count VIII – Wrongful Death Claim*

Florida Statute § 768.28(9)(a) provides that Florida's waiver of sovereign immunity does not apply to, and governmental employees may be personally liable for, acts beyond the scope of their duties, committed in bad faith or with malicious purpose, or that exhibited wanton and willful disregard of human rights, safety, or property. Fla. Stat. Ann. § 768.28(9)(a). If the factual allegations of a complaint could have occurred only if the individual employee acted with bad faith, malice, or with wanton and willful conduct, then the claim against the governmental entity must be dismissed, pursuant to § 768.28. *Gregory v. Miami-Dade Cnty., Fla.,* 719 F. App'x 859, 873 (11th Cir. 2017).

Here, by incorporating paragraphs 19 through 37 into Count VIII, Plaintiff alleges facts that indicate Officer Harper and Officer Connor intentionally acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property. Specifically, Plaintiff alleges that Officer Harper: devised a plan to "box out" other law enforcement agencies; misled the Polk County Sheriff's Office ("PCSO") regarding the meeting time to discuss the mass shooting case; actively resisted the PCSO's attempts to render assistance in the investigation; purposefully did not notify the PCSO that he was conducting an operation in a municipality outside his jurisdiction of Lakeland; that Officer Harper and Officer Connor pursued a high-speed chase outside of their jurisdiction without alerting

relevant, local law enforcement personnel; and that Officer Harper and Officer Connor violated established protocols put in place to ensure public safety. Doc. 43 ¶¶ 19-37, 169. Further, Plaintiff alleges that after Officer Connor and Officer Harper committed criminal assault and battery by ramming into Greene's truck, and Officer Harper committed second degree murder, the two officers devised a plan to conceal their criminal conduct. Doc. 43 ¶¶ 36,169.

In conclusion, Plaintiff's allegations of Officer Connor and Officer Harper's conduct indicates that the officers acted with bad faith, malice, and/or wanton and willful disregard for human rights, safety, and property. Therefore, Count VIII against the City of Lakeland is due to be dismissed. However, the Court will permit Plaintiff to amend the SAC to plead alternative theories of liability against the officers and the City of Lakeland. The Court cautions, however, that the alternative theories must be pled in separate, standalone counts. *See Gregory v. Miami-Dade Cnty., Fla.,* 719 F. App'x 859, 873 (11th Cir. 2017) (concluding that a plaintiff may use an alternative pleading to bring suit against both the governmental entity and the individual employee); *see also Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (A complaint is an impermissible shotgun pleading when it asserts multiple claims against multiple defendants without specifying which of the defendants is responsible for which conduct, or which of the defendants the claim is brought against.)

### Plaintiff's Second Amended Complaint is a shotgun pleading.

As a final measure, Defendants ask this Court to dismiss the SAC for Plaintiff to plead a more definite statement. Doc. 50 at 24. Defendants posit the SAC is a

26

shotgun pleading comprised of buzz words and vague, redundant, and conclusory allegations. *Id.* at 23-25. Plaintiff responds that the SAC is not a shotgun pleading because each count incorporates relevant factual allegations, identifies the specific defendants against whom the count is alleged, and states distinct legal theories.

The Eleventh Circuit has identified four main types of shotgun complaints. *Weiland*, 792 F.3d at 1321. The most common shotgun complaint contains multiple counts, and each count adopts all the allegations of the preceding counts such that each successive count re-alleges everything that came before it, and the final count is a recitation of the entire complaint. *Id.* The second type of shotgun pleading is full of conclusory, vague, and immaterial facts that are not obviously connected to any particular cause of action. *Id.* at 1321-1322. The third category of impermissible shotgun pleadings is where the complaint does not separate each cause of action into a different count. *Id.* at 1322-1323. The final variety of improper shotgun complaints asserts multiple claims against multiple defendants without specifying which of the defendants is responsible for which conduct, or which of the defendants the claim is brought against. *Id.* at 1323.

Here, the SAC falls within the second category of prototypical shotgun pleadings because it is made up of vague, conclusory statements. *See* Doc. 43 ¶¶ 64(j)(k)(p), 100, 104, 109, 111-113, 116, 134, 138, 143, 153. Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, "each allegation

must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Here, the allegations in the SAC are not short, plain, simple, concise, or direct. Instead, the SAC contains a hodgepodge of conclusory statements and factual assertions. *See* Doc. 43 ¶¶ 64(j)(k)(p), 100, 104, 105, 109, 111-113, 116, 134, 138, 143, 153.

For instance, regarding Count IV[5], instead of particularly and concisely describing how Taylor and Sherrouse failed to implement a specific supervisory procedure or policy, Count IV recites a litany of twelve allegedly deficient procedures and/or policies. Doc. 43 ¶ 105. The omnibus list is comprised of superficial descriptions that fail to put Defendants on adequate notice of the claims against them. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining that a shotgun pleading fails to give defendants adequate notice of the claims against them and the grounds upon which each claim rests).

Likewise, Count V[6] is replete with legal buzzwords strung together to create vague, sweeping legal assertions that lack a concrete factual basis. For instance, it alleges "Sherrouse and Taylor personally participated in the constitutional violation," without specifying the precise conduct that shows how Sherrouse and Taylor were personally involved. Doc. 43 ¶ 138. Count V goes on to assert, "the City of Lakeland had customs or policy [sic] that constituted a deliberate indifference to Alex Greene's constitutional rights and the policy and/or custom created by Defendant City of

---

[5] "Supervisory Liability & Policymaker Liability Against Defendants Taylor (individually) and Sherrouse (individually)"

[6] "Municipal Liability (Monell) Defendant City of Lakeland"

Lakeland caused the violation and were the motivating factor that prompted Defendant officers to act in the manner described." *Id.* Yet, there is no simple, plain statement detailing the particular custom or policy at issue, and there are no supporting facts to allege how the custom or policy demonstrated a deliberate indifference towards constitutional rights. In short, Count V directly contributes to the SAC being an impermissible shotgun pleading because it is comprised of a mishmash of legal catchphrases that lack a concrete factual basis. *See also Id.* ¶¶ 139, 140, 146, and 147.

The SAC also contains immaterial facts. *See* Doc. 43 ¶¶ 141, 143, 154. For instance, perhaps in an attempt to discredit the LPD, the SAC references a shoplifting incident, a department-wide sex scandal, and a list of officers who were, in Plaintiff's opinion, unduly promoted. *Id.* The unscrupulous deeds and allegedly undeserved promotions of LPD officers has no bearing on any of the claims alleged in the SAC. As another judge in this District recently penned, "a complaint is not a public forum for vituperation and invective." *Trump v. New York Times Co.,* No. 8:25-cv-2487-SDM-NHA, 2025 WL 2680597 at 2 (M.D. Fla. Sept. 19, 2025). Including irrelevant facts in the SAC renders the complaint an impermissible shotgun pleading.

Although Plaintiff has already amended the complaint three times, she has never done so in response to a Court order. Accordingly, the Court will dismiss the SAC without prejudice and give her one final opportunity to assert specific, concise, and relevant facts and to properly allege alternative theories of liability, if she so chooses. Plaintiff is cautioned that the failure to cure the deficiencies identified in this

Order may result in dismissal of her claims with prejudice upon an appropriate motion by Defendant.

Accordingly, it is **ORDERED**:

1. Defendants Tom Connor, Sammy Taylor, the City of Lakeland, and Shawn Sherrouse's Motion to Dismiss the Second Amended Complaint (Doc. 50) is **GRANTED**.

2. Plaintiff is granted leave to file a Third Amended Complaint within FOURTEEN (14) DAYS from the date of this Order, which cures the deficiencies discussed in this Order. Failure to file an amended complaint within the time provided will result in this action being dismissed, without prejudice, and without further notice.

**DONE AND ORDERED** in Tampa, Florida on March 27, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

30