UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE    GREENE,    as    Personal
Representative  of  the  Estate  of  ALEX
GREENE,

        Plaintiff,                          CASE NO.: 8:25-cv-00270-CEH-LSG

v.

ERIC HARPER, individually;
TOM CONNOR, individually; and
CITY OF LAKELAND.

        Defendants.

_____/

## MOTION TO DISMISS, MOTION TO STRIKE, AND INCORPORATED MEMORANDUM OF LAW

Defendants Eric Harper, Tom Connor, and the City of Lakeland (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6) & (f) move to dismiss Plaintiff's Third Amended Complaint and to strike Plaintiff's request for punitive damages, and state as follows:

## Introduction and Background

1.     Plaintiff's lawsuit is premised on an officer-involved shooting that resulted in the alleged wrongful death of Alex Greene on February 6, 2023.

2.     On March 27, 2026, the Court entered its Order dismissing Plaintiff's Second Amended Complaint without prejudice and providing Plaintiff "one final

1

opportunity to assert specific, concise, and relevant facts and to properly allege alternative theories of liability, if she so chooses." See Doc. 59 at 29.

3.      Plaintiff filed her Third Amended Complaint and Demand for Jury Trial ("TAC") on April 10, 2026. As alleged therein, Geene, who was the target of "a multi-agency law enforcement operation," fled law enforcement before Lakeland police officer, Eric Harper, "rammed" Greene's vehicle "at high speed." See Doc. 71 ¶¶ 9-22. Greene then exited his vehicle and fled on foot before he "entered another vehicle in an attempt to escape." Id. at ¶¶23-24. After "Harper positioned himself to the side of the vehicle and not in its direct path," he "discharged multiple rounds into the vehicle without warning," killing Greene. Id. at ¶¶25-27.

4.      Plaintiff's Third Amended Complaint asserts § 1983 claims against Harper for Excessive Force (**Count I**) and Unlawful Seizure (**Count II**) and a claim against Harper and Connor for "Reckless Creation of Need for Deadly Force" (**Count III**). Plaintiff also asserts a § 1983 claim against Connor for Failure to Intervene (**Count IV**). Plaintiff asserts a Wrongful Death claim against Harper, Connor, and the City under Section 768.19, Florida Statutes (**Count V**), a common law battery claim against Harper (**Count VI**), and a Negligence claim "in the alternative" against the City (**Count VII**). The City's police chief, Defendant Sammy L. Taylor, and city manager, Defendant Shawn Sherrouse, appear to have been dropped as parties to this action. The TAC removes their names from the case caption, and they are no longer identified as parties to the action. This motion adopts Plaintiff's amended case caption.

2

5.      For the reasons stated herein, the Third Amended Complaint should be dismissed *with* prejudice.

**Memorandum of Law**

### I.      Standard of Review—Motion to Dismiss

While Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to overcome a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Although this pleading standard 'does not require detailed factual allegations, … it demands more than unadorned, the-defendant-unlawfully-harmed-me-accusation." Watts v. City of Hollywood, Florida, 146 F.Supp.3d 1254, 1259 (S.D. Fla. 2015) (quoting Iqbal, 556 U.S. at 678). "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1259 (quoting Iqbal, 556 U.S. at 678). The standards in Twombly and Iqbal apply to claims asserted under 42 U.S.C. § 1983 and Florida law. See Iqbal. at 678 (applying Twombly to § 1983 claims) and City of Hollywood 146 F. Supp.3d at 1259 (applying Twombly and Iqbal to § 1983 and related Florida state law claims).

"Courts apply a two-pronged approach when considering a motion to dismiss." Debose v. University of South Florida, 178 F.Supp.3d 1258, 1266 (M.D. Fla. 2016)

(citing <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010)). "First, a court must 'eliminate any allegations in [a] complaint that are merely legal conclusions.'" <u>Id.</u> (quoting <u>Am. Dental Ass'n</u>, 605 F.3d at 1290). "A court must then take any remaining well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> (internal quotations omitted).

**II.   <u>Count I - § 1983 Excessive Force claim against Harper - should be dismissed because Plaintiff's video and well-pled allegations show an objectively reasonable officer would have probable cause to use deadly force.</u>**

In Count I, Plaintiff alleges "Harper used deadly force" even though "Greene did not pose an immediate threat of serious physical harm"; "Harper was not in the direct path of the vehicle" and "No warning was given", thus the "force used was objectively unreasonable" and violated "clearly established Fourth Amendment Law, including the prohibition on the use of deadly force against a fleeing individual who does not pose an immediate threat of serious physical harm." Doc. 71 ¶¶ 32-29.

After eliminating all legal conclusions, as must be done at the motion to dismiss stage, the remaining allegations supporting Count I include Plaintiff's allegation that "No warning was given" before the use of deadly force and "Harper was not in the direct path of the vehicle." Doc. 71 ¶¶ 34-35. However, such a warning is only required where feasible, <u>see</u> <u>Settle v. Collier</u>, 160 F.4th 1282, 1288 (11th Cir. 2025), and as discussed in more detail below, Plaintiff's video evidence contradicts the allegation Harper was not in the path of the vehicle.

4

"The use of *deadly* force is reasonable when an 'officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985) (emphasis in original). "So if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Settle, 160 F.4th at 1288 (internal citations and quotations omitted). "This rule covers situations in which (1) an officer believed his life was in danger because a suspect used a vehicle as a weapon against the officer or (2) the suspect's use of the vehicle otherwise presented an immediate threat of physical harm." Baxter v. Santiago-Miranda, 121 F.4th 873, 888 (11th Cir. 2024). "T[he] [Eleventh Circuit] has '[c]onsistently … upheld an officer's use of deadly force' under this framework." Settle, 160 F.4th at 1288 (quoting Baxter, 121 4th at 888). "And the Fourth Amendment does not 'require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." Id. (quoting Long v. Slaton, 508 F.3d 576, 581 (11th Cir. 2007)).

According to Plaintiff's version of events, after Harper terminated the vehicle pursuit by force, Greene fled on foot, "entered another vehicle in an attempt to escape" and, after positioning himself "to the side of the vehicle and not in its direct path," Harper discharged his weapon "without warning." Doc. 71 ¶¶ 21-26.

However, the two videos Plaintiff filed with her original complaint directly contradict these allegations. See Doc. 16 (videos titled "Ramming" and "Shooting").

5

The "Shooting" video depicts a silver vehicle sitting idle in a parking lot with the driver-side door wide open and the driver of the vehicle standing on the opposite side speaking with other bystanders. As the driver sees Greene running towards the open door, she runs around her vehicle in an attempt to prevent him from entering her vehicle. Greene jumps into the driver's seat and slams the door. The driver is seen beating on the window and attempting to open the door. Two to three seconds later, Harper runs into the view of the camera and can be seen drawing his firearm and taking up a position that is in front of the vehicle but several steps to the right of the vehicle's front bumper. The first puff of smoke from Harper's firearm appears at the 7 second mark of the video, and at this point the car has already begun to accelerate and the front driver-side tire appears to be a mere foot or two from Harper and pointed directly at his position.

Even though this video is not referenced or attached to the TAC, the Court may still consider the video because it is (1) central to Plaintiff's claims and (2) undisputed, as it is the Plaintiff's video she filed with the Court (Doc. 16). See Clarke v. Prummell, Case No: 2:25-cv-00376-JES-DNF, 2026 WL 87145, at *2 (M.D. Fla. March 31, 2026). And "where a video is clear and obviously contradicts the plaintiff's alleged facts, [court's] accept the video's depiction instead of the complaint's account" and "view the facts in the light depicted by the video." Baker v. City of Madison, Ala., 67 F.4th 1268 (11th Cir. 2023) (affirming dismissal of excessive force claim) (citations omitted). "After all, courts are not required to rely on 'visible fiction.'" Id. (citing Scott v. Harris, 550 U.S. 372, 381 (2007)).

6

"In assessing a claim of excessive force, courts ask 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Clarke, 2026 WL 874145, at *11 (quoting Lombardo v. City of St. Louis, 594 U.S. 464, 466 (2021)). "Courts analyze this question from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "allow for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at *11 (citations and quotations omitted).

"Under Florida law '[a] law enforcement officer … need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force … [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest." Clarke, 2026 WL 874145, at *12 (quoting Fla. Stat. § 776.05(1)).

"The Eleventh Circuit has made it clear that law enforcement is not expected to wait and hope for the best in situations like this." Clarke, 2026 WL 874145, at *19 (citing Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010)). An officer "may constitutionally use deadly force when he has probable cause to believe the suspect poses a threat of serious physical harm to the officer or others and has given warning about the potential use of deadly force, if feasible." Id. at *18.

Accordingly, even where the vehicle remains stationary, an office may be justified in using deadly force. See Settle, 160 F.4th at 1288-89 ("Even if the truck never

7

moved, [the officer] could reasonably perceive that Settle's vehicle was a deadly weapon" and "[h]e reasonably interpreted Settle's starting the engine and putting it into gear as escalatory" and therefore "[c]ommon sense would suggest that Settle's next step would to drive – not to remain stationary" and that he "intended to escape in reckless disregard of the officers' safety or to evade arrest by injuring them."); Pace v. Capobianco, 283 F.3d 1275, 1277 (11th Cir. 2002) (finding no Fourth Amendment violation despite the car being stopped and not aimed at an officer following a high-speed chase). Starting "the engine and putting the transmission into gear" coverts the vehicle "into a deadly weapon with which [the suspect is] armed." Settle, 160 F.4th at 1289 ("And because Colier had probable cause to believe Settle intended to drive the truck dangerously, he was not 'require[d] … to wait [to fire] until the moment" that Settle drove it.").

Viewing the TAC in the light depicted by the video, Greene, after fleeing a "multi-agency law enforcement operation", by vehicle and then on foot, committed a first-degree felony in the presence of Officer Harper when he carjacked the silver vehicle with its driver standing nearby. See Fla. Stat. § 812.133. Contrary to the TAC, the video shows Harper was directly in the path of the vehicle and discharged his weapon after the vehicle accelerated in his direction. See Doc. 16 ("Shooting" video) and Doc. 71 ¶¶ 25, 35.

An objectively reasonable officer would conclude that they had probable cause to believe Greene posed a threat of serious physical harm given (1) the fact that Harper was the subject of a "multi-agency law enforcement operation"; (2) he fled the scene

8

of the operation; (3) Harper had to "ram" Greene's vehicle to "terminate Greene's" flight; (4) Greene then resisted arrest by fleeing on foot; (5) as depicted in the Plaintiff's "Shooting" video, Greene committed a carjacking while the driver of the vehicle was standing nearby; (6) as depicted in the Video, the vehicle's front tires were pointed in Harper's direction who was only a foot or two away; and (7) despite Harper having his service weapon drawn in clear view of Greene, Greene accelerated the vehicle in Harper's direction. Accordingly, the video, in conjunction with only the well-pled allegations set forth in the TAC, the shooting did not constitute excessive force in violation of the Fourth Amendment and Count I should therefore be dismissed.

### III.   Count II - § 1983 Unlawful Seizure claim (Harper) - should be dismissed because Plaintiff failed to state a claim that is plausible on its face.

Count II is supported by the allegation that "Harper intentionally rammed Greene's vehicle" and this "ramming constituted a seizure" and "was unreasonable" and "created the circumstances leading to deadly force." Doc. 71 ¶¶ 40-44. While Plaintiff incorporates by reference the TAC's General Factual Allegations section, Plaintiff does not identify the specific "circumstances" that lead to the use of deadly force, or how those circumstances "led" to the use of deadly force. The General Factual Allegations reflect that Greene fled a "multi-agency law enforcement operation" and that Federal agents "discontinued the pursuit due to safety concerns," but Plaintiff does not describe those concerns in any detail or the conditions that lead to those concerns. Plaintiff alleges Defendants "failed to notify or coordinate with the jurisdiction where the pursuit occurred" but does not explain specifically what they

9

should have notified the jurisdiction of or how specifically they should have coordinated with them, or how the failure to do so leads to liability under § 1983. Plaintiff fails to allege any facts explaining what she contends occurred during the pursuit.

While ramming a fleeing suspect's vehicle may constitute a seizure, the "use of force to terminate" a fleeing suspect's "movement" alone, without any further context or allegations describing the scene of the maneuver or manner in which it was performed, does not render the seizure automatically unconstitutional. See, e.g. Scott v. Harris, 550 U.S. 372, 381 (2007) (finding officer's act of "ramming his bumper into respondent's vehicle" objectively reasonable and was not an unconstitutional seizure by excessive force under the Fourth Amendment).

Because Plaintiff's allegation that the seizure was "unreasonable" is a mere legal conclusion, and therefore is not considered at the motion to dismiss stage, Plaintiff's naked allegation that Harper "rammed" Greene's vehicle fails to plausibly allege an unconstitutional seizure, particularly given Plaintiff's allegation that Greene was fleeing law enforcement and was the subject of a "multi-agency law enforcement operation" at the time of the ramming. See Twombly, 550 U.S. at 555 (noting plaintiffs must provide defendants "fair notice of what the … claim is and the grounds upon which it rests"); Scott, 550 U.S. at 381 (finding "ramming" of suspect's vehicle constitutional under the circumstances).

IV.   **Count III - § 1983 "Reckless Creation of Need for Deadly Force" (Harper and Connor) - should be dismissed because there is no such cause of action.**

10

There is no recognized cause of action for the "reckless creation of the need for deadly force", as far as the undersigned has been able determine. To the extent Plaintiff is attempting to argue Harper and Connor provoked the need for deadly force, the Supreme Court has rejected the "provocation rule." See Cnty. of Los Angels v. Mendez, 581 U.S. 420, 431 (2017).

Even if there were such a cause of action, Plaintiff has failed to plead well-pled allegations that give Defendants fair notice of what the claim is and the grounds upon which it rests. See Twombly, 550 U.S. at 555.

Count III is comprised of conclusory allegations that Harper and Connor: "initiated and continued an unauthorized and unsafe pursuit"; "ignored termination of the pursuit by federal agents"; "failed to implement an operational plan for Greene"; "failed to coordinate with local authorities"; "created a dangerous situation" and "the need to use deadly force arose directly from Defendants' own reckless actions." Doc. 71 ¶¶ 45-53.

Plaintiff does not explain how the pursuit was "unauthorized" or "unsafe" or why the federal agents' termination of their pursuit would have any bearing on Defendants' termination of the pursuit, or a clear description of the "dangerous situation" at issue or the Defendants' specific "reckless actions" that allegedly created the need for deadly force, and therefore Plaintiff has failed to state a cause of action.

### V.    Count IV - § 1983 Failure to Intervene (Connor) - should be dismissed because Plaintiff failed to state a claim that is plausible on its face.

Plaintiff's claim that Connor failed to intervene should be dismissed because, for the reasons stated above, she has failed to allege Harper committed an underlying constitutional violation. Sebastian v. Ortiz, 918 F.3d 1301, 1312 (11th Cir. 2019) ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed.")

Even if Plaintiff had sufficiently alleged an underlying constitutional violation, liability for failing to intervene "only arises when the officer is in a position to intervene and fails to do so." Priester v. City of Rivera Beach, 208 F.3d 919, 924 (11th Cir. 2000); see Baker v. City of Madison, Ala., 67 F.4th 1268, 1281 (11th Cir. 2023) (affirming dismissal of failure to intervene claim where "Officer Hose did not witness Officer Nunez's use of the taser and thus did not have the ability to intervene to prevent that use of force.").

In Count IV, Plaintiff alleges in conclusory fashion that "Connor had authority and opportunity to stop or prevent the unconstitutional conduct" but "failed to intervene and instead participated in the events leading to Greene's death." Doc. 71 ¶¶ 55-57. Plaintiff does identify the "unconstitutional conduct" at issue or describe how Connor "failed to intervene and instead participated" in those unspecified "events." To the extent Plaintiff is referring to Harper's "ramming" of Plaintiff's vehicle, there are no well-pled allegations that Connor knew the ramming would be performed or had an opportunity to intervene. See Clarke, 2026 WL 874145 at *20 ("Where the use of force happened quickly and was over quickly, an officer usually does not have the opportunity to intervene.") (internal quotations omitted).

12

With respect to Harper's use of deadly force, Plaintiff does not allege that Connor exited Harper's vehicle and joined in the foot chase or was in a position or the proximity to intervene. Plaintiff's "Shooting" video shows the use of force happened quickly and was over quickly and does not show Connor in a position to intervene. Count IV should therefore be dismissed.

**VI.    Plaintiff's § 1983 claims (Counts I - IV) are barred by Harper and Connor's qualified immunity.**

If a defendant establishes they were acting within their discretionary authority, the burden shifts to the plaintiff to establish that the officer violated a constitutional right that was clearly established at the time of the alleged violation. Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022).

Here, Plaintiff alleges Harper and Connor were "at all relevant times acting under color of state law" and participating in a "multi-agency law enforcement operation," and that when Greene fled, Harper and Connor pursued. Doc. ¶¶ 6-7, 9, 12-16, 21-24. These allegations show Harper and Connor were acting within their discretionary authority as Lakeland police officers. See Huggins v. Sch. Dist. of Manatee Cnty., 151 F.4th 1268, 1278 (11th Cir. 2025) (stating government officials must show they were acting in accordance with their job-related duties and within the scope of their authority); see, e.g., Ferry v. Zaino, 815 F.Supp.3d 1284, 1293 ("A traffic stop is within an officer's discretionary authority.").

For a right to be clearly established, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every

13

like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." King v. Pridmore, 961 F.3d 1135, 1145 (11th Cir. 2020). Plaintiff's vague, conclusory allegations fail to plead the existence of a clearly established right, that is some pre-existing law compelling the conclusion that their actions violated federal law, and therefore Counts I – IV are barred by Officers Harper and Connor's qualified immunity. See Andre v. Clayton Cnty., 148 F.4th 1282, 1291 (11th Cir. 2025) ("When a defendant moves to dismiss a complaint on qualified-immunity grounds, the district court must dismiss any claims that fail to allege a violation of clearly established law.") (citation and internal quotation omitted).

### VII.   Count V - Wrongful Death under Fla. Stat. § 768.19 (Harper, Connor, the City) - should be dismissed because Plaintiff failed to state a claim that is plausible on its face.

"In the state of Florida, the right of action for wrongful death arises '[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person … and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued ….'" Estate of Osorio v. Miami-Dade Cnty., 191 F.Supp.3d 1366, 1368 (S.D. Fla. 2016) (quoting Fla. Stat. § 768.19).

In Count V, Plaintiff alleges in three brief conclusory paragraphs that "Defendants' wrongful conduct caused Greene's death" and therefore "Plaintiff is entitled to damages under Florida law." Doc. 71 ¶¶ 61-63. Plaintiff does not identify the specific "wrongful conduct" on which her claim is based. Defendants and the

14

Court are left to parse through paragraph 1 – 30, which Plaintiff incorporates by reference. Doc. 71 ¶ 61.

With respect to Connor, Plaintiff fails to allege any "wrongful conduct" on the part of Officer Connor that caused Greene's alleged wrongful death. According to the TAC, Greene fled on foot following the vehicle pursuit, and then Officer Harper used deadly force after Greene "entered another vehicle in an attempt to escape." Doc. 71 at ¶¶20-24. Plaintiff does not allege that Conner exited the patrol vehicle and pursued Greene or was even within the vicinity when Harper used deadly force, and therefore Connor should be dismissed from Count V.

With respect to Harper, Plaintiff alleges that "[a]ter the crash, Greene exited and attempted to flee on foot" and then "entered another vehicle in an attempt to escape." Doc. 71 at 23-24. Then "Harper positioned himself to the side of the vehicle and not in its direct path." "Harper discharged multiple rounds into the vehicle without warning." Id. at ¶¶ 25-26. Plaintiff does not allege the length of time that passed between Greene "entering another vehicle" in an attempt to flee and Harper using deadly force, what Greene was or was not doing in the vehicle, how close Harper was to the vehicle, whether the vehicle was parked or accelerating at the time shots were fired, or any other context for her allegation Harper's use of force was "wrongful conduct" under Section 768.19.

"[A] plaintiff's allegations for excessive force must first overcome the presumption of good faith afforded to an officer's use of force, whereby an officer is only liable for damages if the force used is found to be clearly excessive." Estate of

Osorio v. Miami-Dade Cnty., 191 F.Supp.3d 1366, 1368 (S.D. Fla. 2016) (quoting Fla. Stat. § 776.05). Thus, "[u]nder Florida law, an 'officer is justified in the use of any force … [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest." Id. (quoting Fla. Stat. § 776.05).

In Estate of Osorio, the plaintiff alleged that before the officers responded to the decedent's home, his mother informed them "that he had a history of mental illness and that he was alone inside the home." Id. at 1367. "The officers proceeded to enter the house by breaking through a window" and "[a]fter confronting [the decedent], the officers allegedly proceeded to shoot him fourteen times." Id. In considering the defendants' motion to dismiss, the court noted it "has no other information on the circumstances surrounding this confrontation or [decedent's] death." Id.

The court dismissed the plaintiff's wrongful death claim because it was based on negligence and there can be no "negligent" use of excess force, and went on to find that "[e]ven if the Court were to analyze the wrongful death claim based on an intentional tort rather than negligence, the Estate has failed to allege any facts concerning the confrontation between [decedent] and the officers, nor any evidence that their actions were clearly excessive or not reasonably believed to be necessary given the circumstances." Id. at 1369. "Without any facts detailing the circumstances of the encounter, the Estate cannot overcome the good faith presumption surrounding the officers' actions," and therefore the plaintiff's wrongful death claim was dismissed. Id.

16

Furthermore, Florda law authorizes deadly force when the actor "reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony" and such an actor "does no have a duty to retreat and has the right to stand his or her ground[.]" Fla. Stat. § 776.012(2).

Florida law also affords officers sovereign immunity from personally liability "in tort or [being] named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless* such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (emphasis added).

Plaintiff alleges Harper "was at all relevant times acting under color of state law" and that he used deadly force after Greene fled a "multi-agency law enforcement operation" in which Harper was participating and that, when Harper immobilized Greene's vehicle, Greene then "entered another vehicle in an attempt to escape" but was shot by Harper who had "positioned himself to the side of the vehicle and not in its direct path." Doc. 71 ¶ 25.

Harper is therefore entitled to sovereign immunity based on the face of the TAC and in light Plaintiff's "Shooting" video. Plaintiff allegations show Harper was acting within the scope of his employment as a law enforcement officer, and Plaintiff has failed to allege any facts that Harper acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or

17

property." *See* Fla. Stat. § 768.28(9)(a). Count V should therefore be dismissed with prejudice.

Absent plausibly alleged facts demonstrating "wrongful conduct" by Harper or Connor causing the wrongful death of Alex Greene, there can be no basis to hold the City vicariously liable, and therefore Count V should be dismissed in its entirety.

**VIII.** <u>**Count VI - Battery (Harper) - should be dismissed because Plaintiff failed to state a claim that is plausible on its face.**</u>

In Count VI, Plaintiff alleges "Harper intentionally shot Greene"; the "use of force was unlawful" and "Harper's actions constitute a battery under Florida common law." Doc. 71 at ¶¶65-67.

"A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." <u>City of Miami v. Sanders</u>, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). "Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer 'reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest." <u>Id.</u> (quoting Fla. Stat. § 776.05(1)). Courts will apply the same "excessive force analysis framework" used to analyze § 1983 excessive force claims. <u>See</u> <u>Clarke</u>, 2026 WL 874145, at *23 (dismissing plaintiff's state law battery claim because officers' use of deadly force found objectively reasonable under § 1983 excessive force analysis).

As set forth above and reflected in the "Shooting" video, Harper's use of deadly force was objectively reasonable in light of his close proximity to the running vehicle

Greene had just carjacked, particularly in light of Plaintiff's allegations that Greene was the subject of a "multi-agency operation" and fled both LPD and federal agents and continued to flee on foot despite Harper having immobilized his vehicle. Count VI should therefore be dismissed.

IX. **Count VII - Negligence (the City) - should be dismissed because Plaintiff failed to state a claim that is plausible on its face and Sovereign Immunity applies.**

Count VII, Negligence, which is "plead in the alternative", does not incorporate by reference the TAC's General Factual Allegations section or any other preceding paragraphs. Count VII therefore rests entirely on the allegations contained in Count VII. See Doc. 71 ¶¶ 68-76.

Plaintiff alleges that Defendants Harper and Connor "were acting within the course and scope of their employment with the City of Lakeland" and that the City "owed a duty to exercise reasonable care in the operational control, preparation, training, supervision, and coordination of law enforcement activities." Doc. 71 ¶¶ 69-70. However, the City "breached that duty by failing to provide adequate operational training and preparation for multi-agency, out-of-jurisdiction enforcement activity." Id. at ¶71. And that the City "further breached its duty by failing to ensure safe pursuit practices, coordinated communications, and proper supervisory control," which "resulted in an unsafe pursuit, loss of coordination, confusion of command, and escalation." Id. at ¶¶72-73. Plaintiff concludes "[t]he negligence caused Greene's death." Id. at ¶74.

19

As with the counts preceding it, Count VII is comprised entirely of buzzwords and conclusory allegations. For instance, nowhere within Count VII does Plaintiff describe the "operational training" or "preparation for multi-agency, out-of-jurisdiction enforcement activity," the City was required to provide, let alone the specific facts that would put the City on fair notice of how it breached that duty. Stripping away the conclusory allegations as is required at the motion to dismiss stage, there are no well-pled allegations remaining that state a claim for negligence that is plausible on its face.

Further, "Florida has not waived its sovereign immunity for lawsuits premised on government actors acting withing their discretion" and thus, "[t]he burden is on the plaintiff to plead how the State waived its sovereign immunity." Bauer v. Chronister, 618 F.Supp.2d 1334, 1345 (M.D. Fla. 2022) (citing City of Gainesville v. Dep't of Transp., 778 So. 2d 519, 530 (Fla. 1st DCA 2001) ("Our supreme court has held that facts on which a waiver of sovereign immunity depends must be pleaded in the complaint.")).

Plaintiff alleges the City failed to properly train and supervise and provide adequate operational training, and prepare for multi-agency, out-of-jurisdiction enforcement activity. Doc. 71 ¶¶ 70-72. While Plaintiff alleges her claims relate to the "operational performance of Defendant's duties," this legal conclusion is discarded for purposes of assessing a motion to dismiss. Doc. 71 ¶¶ 75-76. Contrary to this assertion, Plaintiff alleges the City failed to provide "operational training" and "preparation" for multi-agency, out-of-jurisdiction enforcement activity.

"Both training and resource-allocation decisions are discretionary", and therefore Count VII is barred by the City's sovereign immunity afforded under Section 768.28, Florida Statutes. See Bauer, 618 F.Supp.2d at 1345 (dismissing plaintiff's failure-to-train claim against the Hillsborough County Sherriff's Office on the basis of sovereign immunity).

### X.      Plaintiff's request for punitive damages should be stricken.

In her prayer for relief, Plaintiff requests punitive damages against Harper and Connor. While punitive damages maybe awarded against an individual under § 1983, the Plaintiff must show "the defendant's conduct is shown to be motivated by evil motive or intent" or their actions involved "reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Here, aside from mere legal conclusions, Plaintiff has failed to allege any facts that show Harper and Connor were motivated by an evil motive or intent or acted with reckless indifference to Greene's federally protected rights, and therefore her request for punitive damages should be stricken. See Fed. R. Civ. P. 12(f).

### XI.     Defendants Sammy Taylor and Shawn Sherrouse should be dismissed with prejudice.

The Order dismissing Plaintiff's Second Amended Complaint gave the Plaintiff until April 10, 2026 to file a Third Amended Complaint. While Plaintiff has filed a Third Amended Complaint, her TAC does not identify Defendants Taylor or Sherrouse as parties to the action and does not assert any causes of action against them. They should therefore be dismissed from this action with prejudice.

**XII.    The Third Amended Complaint constitutes another shotgun pleading and should be dismissed with prejudice.**

The Court's Order dismissing the SAC described in detail the four categories of prohibited shotgun pleadings and explained that Plaintiff's SAC fell into the second category which "is made up of vague, conclusory statements." See Doc. 59 at 26-30. The Court noted, for instance, "Count V is replete with legal buzzwords strung together to create vague, sweeping legal assertions that lack a concrete factual basis. For instance, it alleges 'Sherrouse and Taylor personally participated in the constitutional violation,' without specifying the precise conduct that shows how Sherrouse and Taylor were personally involved." Id. at 28 (quoting Doc. 43 ¶ 138).

Despite the specific examples given in the Order, the same vague, conclusory statements that rendered the SAC deficient persist in the TAC.

For example, in Count IV – Failure to Intervene, Plaintiff alleges Connor was "actively involved in the pursuit and events." (underlined emphasis added). And that he "had authority and opportunity to stop or prevent the unconstitutional conduct" but he "failed to intervene and instead participated in the events leading to Greene's death." Doc. 71 ¶¶ 55-60. (emphasis added). Plaintiff is left to parse through paragraphs 1 – 30, which are incorporated into Count IV by reference, but paragraphs likewise contain a mix of mere legal conclusions and vague allegations. For example, Plaintiff alleges "Federal agents discontinued the pursuit due to safety concerns," but these safety concerns are not described, nor is any effort made to allege how a separate agency's termination of the pursuit bears on the LPD officer's liability. Counter IV fail

to notifys Connor what portion of "the pursuit" or what "events" he was involved in that subject him to liability, and he is left guessing what specific conduct Plaintiff considers "unconstitutional" and the manner in which he should have intervened so as to have prevented "the events" leading to Greene's death.  This is but one example. See Doc. ¶¶ 12, 14-30, 32-39, 41-44, 46-53, 55-60, 62-63, 65-67, 69-76.

The Order cautioned Plaintiff "that the failure to cure the deficiencies identified in this Order may result in dismissal of her claims with prejudice upon an appropriate motion by the Defendant." Doc. 59 at 29-30. In light of the fact that it has been more than one year since Plaintiff filed this action, and she has yet to plead a cause of action that gives Defendants adequate notice of the claims against them and the grounds upon which each claim rests, Defendants request the TAC be dismissed *with* prejudice. See Tran v. City of Holmes Beach, 817 Fed.Appx. 911 (11th Cir. 2020) (dismissing with prejudice third amended complaint found to be yet another shotgun pleading); In re Fundamental Long Term Care, Inc., 873 F.3d 1325 (11th Cir. 2017) (holding dismissing second amended complaint with prejudice was not an abuse of discretion and noting that "[i]nstead of clarifying the content of the initial pleading and remedying its deficiencies of form, the allegations in the Estates' Second Amended Complaint were not clearer or more precise than those contained in the First Amended Complaint.").

[*Local Rule 3.01(g) Certification follows*]

23

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned hereby certifies that counsel for

Defendants conferred with counsel for Plaintiff on or about April 29, 2026, but counsel

were unable to reach an agreement regarding the issues raised in this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to all attorneys of record.

**GRAY ROBINSON, P.A.**

*/s/Richard Barry*
**RICHARD BARRY, ESQ.**
**Lead Counsel**
Florida Bar No. 360650
richard.barry@gray-robinson.com
clara.torres@gray-robinson.com
lea.williams@gray-robinson.com
**MATTHEW A. BOWLES, ESQ.**
Florida Bar No. 0123501
matthew.bowles@gray-robinson.com
carolyne.amengual@gray-robinson.com
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone:  (407) 843-8880
Facsimile:  (407) 244-5690
*Counsel Defendants*

*/s/ Matthew D. Jones, Esq.*
**MATTHEW D. JONES, ESQ.**
Florida Bar No.: 86003
Matthew.jones@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462

#64137607 v1

24