# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DIANE GREENE**, *et al.*,
       Plaintiff,

v.
                              Case No. 8:25-cv-270-CEH-LSG

**ERIC HARPER**, *et al.*,
       Respondents.
_____/

## AMENDED MOTION OF NON-PARTY TENTH CIRCUIT STATE ATTORNEY TO QUASH PROCESS AND FOR A PROTECTIVE ORDER

**COMES NOW** the Honorable Brian W. Haas, in his official capacity as State Attorney in and for the Tenth Judicial Circuit of Florida, representing Polk, Highlands, and Hardee Counties, Florida ("the Tenth Circuit State Attorney"), by and through the undersigned counsel, and in accordance with Fed. R. Civ. P. 26(c)(1) and 45(d)(3)(A) enters this, its motion to quash process directed to the Tenth Circuit State Attorney and moves for a protective order in regard to a subpoena for deposition for the Tenth Circuit State Attorney, showing the following support:

### I. Preliminary Statement

Plaintiff sues pursuant to 42 U.S.C.S. § 1983, alleging constitutional violations by employees of the City of Lakeland, Florida, in the death of Alex Greene. All Defendants are associated with the City. The Tenth Circuit State

Attorney is a non-party to this suit. On June 3, 2026, Plaintiff served process upon the Tenth Circuit State Attorney in accordance with Fed. R. Civ. P. 45, commanding his remote appearance for deposition on June 18, 2026. On June 8, 2026, counsel for the Plaintiff advised the undersigned by electronic mail that the deposition will be rescheduled due to the Tenth Circuit State Attorney's unavailability for the chosen date. As of this writing, a new subpoena has not been issued, nor has the original subpoena been formally withdrawn. A copy of the subpoena is attached hereto as Exhibit A.

The following factual recitation is taken from this Court's June 2, 2026 protective order preventing Plaintiff from deposing Lakeland Police Chief Sam Taylor, at the behest of Defendants, and preventing Plaintiff from deposing Polk County Sheriff Grady C. Judd, Jr., a non-party to this matter, on the Sheriff's motion under Rule 26(c). *See Order, Greene et al. v. Harper*, No. 8:25-cv-00270-CEH-LSG at 1-5 (M.D. Fla. Jun. 2, 2026)(Doc. 84). *Infra,* the Tenth Circuit State Attorney will raise similar concerns as did the Sheriff.

> Greene sues the defendants as the personal representative of the Estate of Alex Greene under 42 U.S.C. § 1983 for violations of Alex Greene's constitutional rights resulting from a police pursuit resulting in Alex Greene's death. Doc. 71, ¶¶ 5-30. On February 6, 2023, Lakeland Police Department Captain Eric Harper and Lieutenant Tom Connor were part of a law enforcement operation with federal agents. *Id.*, ¶¶ 9-11, 18A.–D. During the operation, the officers in an unmarked vehicle initiated contact with Alex Greene, who fled the scene in his vehicle and began a lengthy, high-speed chase. *Id.*, ¶¶ 13-18, 20. Greene alleges that the pursuit continued

beyond Lakeland Police Department's jurisdiction, but Harper and Green continued the chase despite failing to adequately communicate with other officers involved in the pursuit, failing to obtain a clear command structure, and failing to ensure proper supervision, which led to "the unsafe escalation of the encounter." *Id.*, ¶ 18A.–D.

To stop the chase, Harper "intentionally rammed" his vehicle into Alex Greene's vehicle, but Alex Greene fled on foot and entered another vehicle nearby to evade Harper and Connor. *Id.*, ¶¶ 20-24. To stop Alex Greene from fleeing, Harper fired multiple rounds, which struck Alex Greene, resulting in his death. *Id.*, ¶¶ 26-27. Greene alleges (1) that Harper and Connor used deadly forced even though Alex Greene posed no immediate threat of serious bodily harm at the time force was used and (2) that the use of deadly force was the result of the defendants' own reckless conduct. *Id.*, ¶¶ 28-29. Greene alleges that the defendants' actions constitute a willful, malicious, and reckless disregard for Alex Greene's rights. Id., ¶ 30.

Greene sued Harper, Connor, and the Lakeland Police Department, and the initial complaint also named Chief Taylor and Polk County Sheriff Grady Judd as defendants. Doc. 1. Importantly, the initial complaint accused the defendants of engaging in a plan to cover up their purported criminal conduct. *Id.*, ¶¶ 109-124. Greene initially named Sheriff Judd and Chief Taylor as defendants in this action. Doc. 1. Sheriff Judd moved for a dismissal and argued the complaint failed to state a claim against him because he oversees the Polk County Sheriff's Office and is not responsible for the Lakeland Police Department or its officers. Doc. 21.

Greene amended his complaint and dropped his claims against Sheriff Judd. [footnote omitted]. Doc. 25. Harper, Conner, Chief Taylor, and the Lakeland Police Department moved to dismiss the amended complaint. Doc. 27. Instead of responding to the motion to dismiss, Greene successfully moved for leave to file a second amended complaint "[i]n light of the significant factual and procedural developments since [Greene] filed suit." Docs. 40, 41, 43-44. The second amended complaint named Chief Taylor as a

defendant and alleged that Chief Taylor and the Lakeland Police Department officers acted in concert with Sheriff Grady Judd, who arrived on the scene and crafted a narrative to alleviate the officers' responsibility for Alex Greene's death. *Id.*, ¶¶ 44-45, 46-56.

Chief Taylor and the Lakeland Police officers moved to dismiss the second amended complaint as an impermissible shotgun pleading. Doc. 50. Alternatively, Chief Taylor and the Lakeland Police also moved to dismiss counts four and five of the second amended complaint because Greene failed to allege that Chief Taylor, as the supervisor of Lakeland Police Department, instituted or failed to institute a policy or a custom, which resulted in the violation of Alex Greene's constitutional rights. Doc. 50 at 7-22. Chief Taylor and the Lakeland Police argued for dismissal of counts seven and eight based on sovereign immunity. Doc. 50 at 22-24. A March 27, 2026, order dismissed the second amended complaint as an impermissible shotgun pleading but granted Greene leave to amend. Doc. 59 at 26-30 ("Although Plaintiff has already amended the complaint three times, she has never done so in response to a Court order."). Importantly, the district judge found that Greene failed to plead facts specifying Chief Taylor's "direct involvement in the incident at issue," including his purported false statements to the media, which occurred after the events causing Alex Greene's alleged constitutional deprivations. Doc. 59 at 11-12.

Greene filed a third amended complaint and dropped Chief Taylor as a named defendant. Doc. 71. Importantly, the third amended complaint removes Greene's claims of civil conspiracy involving Chief Taylor, that is, allegations that Chief Taylor and Sheriff Judd crafted a narrative to cover up of the defendants' or Polk County Sheriff's liability. Doc. 71. Instead, the seven-count, third amended complaint raises claims of excessive force, unlawful seizure, and battery against Harper; the reckless creation of need for use of deadly force against Harper and Connor; the failure to intervene and for direct participation against Connor; negligence against the City of Lakeland; and for wrongful death against all of the defendants. Doc. 71 at 5-11. The defendants have moved to dismiss the third amended complaint, and Greene filed a response in opposition. Docs. 74, 81.

The defendants move for a protective order under the "apex doctrine" prohibiting Greene from deposing Chief Taylor, who is the highest ranking official and the head of the Lakeland Police Department. Doc. 77 at 5. The defendants argue that the third amended complaint contains no allegations against Chief Taylor and that Greene has not sought to schedule a Rule 30(b)(6) deposition of another member of the Lakeland Police Department, both of which warrant the entry of a protective order. Doc. 77 at 5-8. Sheriff Judd also seeks an order under the apex doctrine protecting him from providing deposition testimony as the head of the Polk County Sheriff's Office, because he is no longer a party to this action and "possesses no unique, superior, non-duplicative, first-hand knowledge relevant to this litigation." Doc. 78 at 2, 3-6. Greene responds that depositions are necessary because Chief Taylor and Sheriff Judd contain essential, discoverable information related to the multi-agency operation that resulted in the death of Alex Greene. Docs. 82, 83.

Doc. 84 at 1-5.

On information and belief, Plaintiff's interest in haling the highest-ranked elected law enforcement official in Polk, Highlands, and Hardee Counties into deposition and perhaps, trial, in this matter is a letter the Tenth Circuit State Attorney authored, dated January 10, 2024. That letter is attached as Exhibit B. Therein, the Tenth Circuit State Attorney expressed opinions critical of Defendant Harper's conduct relating to Alex Greene's death, and referred to an investigation the Tenth Circuit State Attorney's Office conducted into that matter. *See* Exh. B.

This letter shows that the Tenth Circuit State Attorney's knowledge of the matters inhering in Alex Greene's death derive from inadmissible hearsay

relating to the law enforcement investigation, not first-hand, unique, superior, non-duplicative knowledge relevant to this litigation. *See id.*  The Tenth Circuit State Attorney is not alleged to have witnessed, participated in, directed, supervised, or personally investigated the operative events giving rise to Plaintiffs' claims. The Tenth Circuit State Attorney is not personally named in the lawsuit, is a non-party, and Plaintiff has made no attempt to secure information relating to the investigation into Alex Greene's death short of attempting to secure inadmissible hearsay through the Tenth Circuit State Attorney. The Tenth Circuit State Attorney objects to his deposition, and accordingly moves to quash process, and for a protective order.

**WHEREFORE**, the Honorable Brian W. Haas, in his official capacity as elected State Attorney in and for Polk, Highlands, and Hardee Counties, respectfully moves the Court to grant this request for a protective order based upon the apex doctrine, the deliberative process privilege, and the work product doctrine, quash process, and deny Plaintiff's attempt to depose him.

## II. Memorandum of Law

The Tenth Circuit State Attorney seeks a protective order against his deposition being taken, as authorized in Rule 26(c)(1). The Tenth Circuit State Attorney is a constitutional officer under Article V, Fla. Const. (1967 rev.), and is the highest-ranking executive in his agency. There are three reasons that the

Court should deny Plaintiff's attempt to depose him. First, the federal "apex" doctrine; second, the federal deliberative process privilege, and third, the federal work product doctrine precluding use and discovery of opinion work product. As to the latter, the Tenth Circuit State Attorney is not seeking to preclude the disclosure and use of Exhibit B to this motion; that is a public record document under Florida law, and he will provide a records custodian to authenticate same upon request. However, he does seek to preclude Plaintiff from harming his ability to supervise and investigate criminal matters by going behind the letter and exploring communications between lawyers in his office and decisions made in the investigative process.

## A. The Apex Doctrine Precludes the State Attorney's deposition.

As the highest elected law enforcement official in Polk, Highlands, and Hardee Counties, the federal "apex" doctrine applies to the Tenth Circuit State Attorney. To begin with, it is helpful to recount the unique position that the elected state attorney of a judicial circuit in Florida holds. Article I, § 17 of the Florida Constitution provides that

> [i]n each judicial circuit a state attorney shall be elected for a term of four years. Except as otherwise provided in this constitution, the state attorney shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law; provided, however, when authorized by general law, the violations of all municipal ordinances may be prosecuted by municipal prosecutors. A state attorney shall be an elector of the state and reside in the territorial jurisdiction of the circuit; shall be and have

been a member of the bar of Florida for the preceding five years; shall devote full time to the duties of the office; and shall not engage in the private practice of law. State attorneys shall appoint such assistant state attorneys as may be authorized by law.

Section 27.02(1) Fla. Stat. provides that the State Attorney's duties are to

appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party, except as provided in chapters 39, 984, and 985. The intake procedures of chapters 39, 984, and 985 shall apply as provided therein. The state attorney shall appear in the circuit and county courts within his or her judicial circuit for the purpose of prosecuting violations of special laws and county or municipal ordinances punishable by incarceration if the prosecution is ancillary to a state prosecution or if the state attorney has contracted with the county or municipality for reimbursement for services rendered in accordance with s. 27.34(1).

Investigation is a part of the State Attorney's duty as defined in Florida law. *See Eagan v. DeManio,* 294 So. 2d 639, 640 (Fla. 1974). Under Florida law, a State Attorney therefore functions as a "one-man grand jury," and therefore in his investigative capacity, he possesses all the rights and privileges of a state grand jury. *See Imparato v. Spicola*, 238 So. 2d 503, 505 (Fla. 2d DCA 1970). The State Attorney and his assistants are the "investigatory and accusatory arm of our judicial system of government," limited only as provided by law in pursuit of those who victimize the citizens in his jurisdiction by committing crimes. *Id.* An information he or his assistants may file carries the same force as a grand jury's indictment. *See Martin v. Michell*, 188 So. 2d 684, 687 (Fla. 3d DCA 1966).

He is **never** required to explain his filing decisions. *See McClesky v. Kemp*, 481 U.S. 279, 297 (1987)(*citing Imbler v. Pachtman*, 424 U.S. 409, 425-26 (1976); *citing also Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978)).

When the law imposes upon the State Attorney a duty to prosecute crimes, it provides him and his assistants with every power needed to carry that duty out. *See Martin*, 188 So. 2d at 687. Central to his function is obtaining the testimony of witnesses to crime. He may therefore summon witnesses to testify before him in criminal investigations. *See* § 27.04 Fla. Stat. (2025). Doing so does not render him liable to rendering testimony in a civil case, nor does it make him a material witness, particularly when other avenues are available to obtain the information the civil litigants seek. Courts routinely recognize that it may be appropriate to limit or preclude depositions of high-ranking officials, often referred to as "apex" depositions, because "high[-]level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Goines v. Lee Mem'l Health Sys.*, 2018 U.S. Dist. LEXIS 136164, at *4 (M.D. Fla. Aug. 13, 2018) (collecting cases); *see Jet Blast, Inc. v. Blue Lake Serv.*, LLC, 348 F.R.D. 706, 709 (N.D. Fla. 2025); *see also Rocker v. City Of Ocala, Fla.*, 355 Fed. Appx. 312, 314 (11th Cir. 2009) (holding that the trial court did not abuse its discretion in preventing the deposition of the Sheriff where plaintiff in § 1983 case failed to

show the Sheriff "had unique knowledge about her case" and the Sheriff made all the involved officers available for deposition).

Thus, when a party seeks the deposition testimony of an "apex" deponent, courts consider 1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and 2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. *See Goines*, 2018 U.S. Dist. LEXIS 136164, at *4; *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (protective order granted barring deposition of president of drug company because he lacked direct knowledge of the facts in dispute, and other employees had more direct knowledge); *McMahon v. Presidential Airways, Inc.*, 2006 U.S. Dist. LEXIS 4909, at *2 (M.D. Fla. Jan. 18, 2006) ("An officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactorily through less intrusive means").[1]

Where the requesting party fails to meet this burden, courts generally prohibit the deposition. For example, in *Dart Industries, Inc. v. Acor*, 2008 U.S. Dist. LEXIS 37731, (M.D. Fla. May 7, 2008), the court precluded the

---

[1] This principle is reflected in the Middle District Of Florida Discovery Handbook (2021) § II.A.(6) ("If information is sought from an organization, counsel should not seek in the first instance to take the deposition of the organization's senior management if someone else in the organization can be expected to have more direct and firsthand knowledge or information. Depositions are not properly used to inconvenience or distract senior management who may not be immediately involved in the dispute.").

defendants from deposing the executive vice president of the plaintiff's parent company because the defendants failed to show that the officer had "unique" knowledge about disputed matters in the case. Notably, the court found that the defendants did not carry their burden under the apex doctrine, even though they had demonstrated that the senior officer had some knowledge of facts relevant to the case, because the senior officer's knowledge must be unique. Id. ("Merely having some knowledge, however, is not sufficient to override the protections of the apex doctrine."). Likewise, in *Chick-Fil-A, Inc. v. CFT Development, LLC*, 2009 WL 928226, at *3 (M.D. Fla. Apr. 3, 2009) the court denied the defendant's motion to compel the deposition of the plaintiff's president because "[the] [d]efendants have failed to convince the Court that [the officer] possesses any unique or superior knowledge concerning any information which is relevant and material to the issues in this case or that [d]efendants have been unable to obtain full and complete discovery from [the plaintiff's] representatives, already deposed in this case, concerning the matters identified in [the] [d]efendants' motion to compel."

High-ranking government officials are not subject to depositions absent extraordinary circumstances. *See United States v. Morgan,* 313 U.S. 409, 421-22 (1941). In applying the doctrine to government officials, it is "generally accepted that heads of government agencies are covered by the apex doctrine." *Fla. v.*

*United States*, 625 F. Supp. 3d 1242, 1246 (N.D. Fla. 2022) (internal citations omitted); *see Odom v. Roberts*, 337 F.R.D. 359, 363 (N.D. Fla. 2020) (explaining that "the federal courts have adopted a rule that generally exempts 'high-ranking' government officials from depositions when the individual lacks personal knowledge relevant to the case or some other witness could provide sufficient testimony") (internal citations omitted).

Typically, cases such as this one arise where a Sheriff or police chief is summoned for deposition. In the context of law enforcement, "[m]ost courts that have addressed the issue have held that sheriffs—regardless of the population or size of the jurisdiction in which they serve—are of sufficient rank to warrant protection from depositions." *Odom*, 337 F.R.D. at 364 (where the court only permitted limited deposition of the Sheriff after plaintiff deposed three individuals designated under Rule 30(b)(6) and the witnesses indicated that only the Sheriff would have the information sought). Similarly, "[n]umerous cases have held that police chiefs are high-ranking government officials who may not be deposed absent extraordinary circumstances." *Spadaro v. City of Miramar*, 2012 U.S. Dist. LEXIS 117925, at \*2 (S.D. Fla. Aug. 21, 2012) (where the "[p]laintiff failed to meet his burden of demonstrating extraordinary circumstances necessitating the depositions of highranking [police] officials"); *see Harvard v. Dixon*, 2022 U.S. Dist. LEXIS 258000, at \*2 (N.D. Fla. May 26,

2022) (applying the apex doctrine in preventing the deposition of the Secretary of the Florida Department of Corrections where plaintiffs did not meet their burden "[t]o show 'extraordinary circumstances' or a 'special need,'" where "plaintiffs had to—at the least—show that the information sought was essential to their claim and could not be obtained by other means").

If the sheriff of a jurisdiction, a city police chief, or the Secretary of the Florida Department of Corrections are subject to the apex doctrine, then the Tenth Circuit State Attorney is all the more so. He is the chief prosecuting officer in three Florida counties and supervises an office broken up into multiple subunits. He is a constitutional officer entrusted with privileged information as a matter of Florida law, and is responsible for the investigation and prosecution of crimes as well as representing the State of Florida in civil matters as the law provides.

As to Sheriff Judd and Chief Taylor, this Court has held that it has broad discretion to render protective orders and regulate discovery. *See* Doc. 84 at 5-6, and cases therein cited. The Court denied deposition of Chief Taylor even though Plaintiff averred that Chief Taylor was present at the scene of Alex Greene's death, made public and official communications concerning the incident, applied both pursuit and mutual-aid policies thereto, and had knowledge of related training and supervision issues. *See* Doc. 84 at 8. The Court

precluded deposition of Sheriff Judd despite the Sheriff's presence at the crime scene, his participation in public communications involving the incident, his interactions with involved agencies, and their personnel. *See id.* The Court held that Plaintiff engaged in sheer speculation that the Sheriff had firsthand knowledge of the crime that was "unique, non-repetitive[, and] firsthand." Doc. 84, *quoting cases*. Importantly, the Court pointed to *Affinity Labs of Texas, Inc. v. Apple, Inc.*, 2011 WL 1753982 at *16 (N.D. Cal. May 9, 2011), which observed that "[t]he mere fact that [the CEO] made public statements, even on issues that Affinity considers relevant to its claims, are insufficient to justify his deposition. Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues."

Exhibit B to this motion exactly is the sort of public record statement that the Court precluded deposition both of Sheriff Judd and Chief Taylor upon, and that exactly is what was precluded in *Affinity Labs*. As those persons, the Tenth Circuit State Attorney's letter at Exhibit B shows that the Tenth Circuit State Attorney gained his knowledge secondhand through "the OIDI Task Force" investigation. Exh. B at 1. His knowledge is not unique, nor is it firsthand. It is based upon hearsay that through *him* would be inadmissible in this Court. *See* Fed. R. Evid. 803. Plaintiff has not shown how the Tenth Circuit State Attorney has information that is unattainable through less burdensome or intrusive

means, such as through the members of the investigating task force. *See* Doc. 84 at 9-10, *denying* deposition of Chief Taylor and Sheriff Judd for similar failings. The Court should apply the apex doctrine, quash process, and forbid the deposition of the Tenth Circuit State Attorney.

## B. The Deliberative Process Privilege Applies

As to the State Attorney's deliberative process, in this motion the undersigned relies upon federal privileges, as that is what is required. *See Speak v. Whidden*, 2020 U.S. Dist. LEXIS 147406, *6 (M.D. Fla. Aug. 17, 2020). And one of these is the deliberative process privilege. Courts "must quash of modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies.'" *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 139 (D. Mass. 2014)(*quoting* Fed. R. Civ. P. 45(d)(3).

*Stamps* was a civil rights action devolving from a shooting during a search warrant execution. *See* 38 F. Supp. 3d at 138. The District Attorney of Middlesex County (D.A.) investigated the death, and Stamps' estate sought production of the D.A.'s investigative file. *See id.* The D.A. refused, citing privileged materials. *See id.* A magistrate judge ordered disclosure of certain of the documents within. *See id.* The magistrate judge ruled that certain of the documents were protected under the deliberative process privilege. *See id.*

It is the burden of the movant to show that the privilege applies. *See Stamps,* 38 F. Supp. 3d at 140 (*quoting Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984). A party's interest in disclosure is strongest where the information sought is "highly relevant, helpful, and unavailable from other sources." *Stamps,* 38 F. Supp. 2d at 140, *quoting Hall*, 734 F.2d at 66.  But the interest of the party asserting the privilege is highest when

> the information in question falls squarely within the definition of privilege, and its disclosure would undermine the public interest in free, candid and uninhibited exchange of information.

*Stamps,* 38 F. Supp. 2d at 140, *quoting Hall*, 734 F.2d at 66.

*Hall*, 734 F.2d at 66, provided that a qualified privilege exists for "intragovernmental memoranda containing opinions or recommendations of policy-making rather than purely factual import." *Stamps,* 38 F. Supp. 2d at 140, observed that:

> "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). To qualify for the privilege, the government must prove the document at issue was (1) "prepared prior to a final decision in order to assist an agency decisionmaker in arriving at his decision," and (2) "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Town of Norfolk v. United States Army Corps of Eng'rs,* 968 F.2d 1438, 1458 (1st Cir. 1992) (internal quotations omitted).

The *Stamps* court observed that the materials sought by the plaintiffs were handwritten notes taken during witness interviews and while reviewing transcripts, a quintessential part of the deliberative process for a prosecutor that may reflect judgments regarding a filing decision. *See* 38 F. Supp. 3d at 140-41. *Quoting Starkey v. Birritteri*, 2013 U.S. Dist. LEXIS 108828, *2 (D. Mass Aug. 2, 2013), the *Stamps* court observed that the deliberative process privilege applies to prosecutorial decisionmaking. *See* 39 F. Supp. 3d at 141. The privilege is qualified, and conflicting interests must be balanced on a case-by-case basis. *See Hall*, 734 F.2d at 66.

*Stamps,* 38 F. Supp. 3d at 141, observed that a memorandum from the elected district attorney to his subordinates with comments on a draft report relating to the shooting, was made in preparation for deciding what action to take and fell within the deliberative process privilege. So too did e-mails between D.A. employees regarding the investigation. *See id.* To overcome that, the Stamps estate had to show that the information sought had to be "relevant, helpful, and unavailable from other sources," *quoting Hall,* 734 F.2d at 66, and that its interest in the privileged document outweighed the public interest in maintaining the privilege. 38 F. Supp. 3d at 141. All the documents in question

> contain the DA's impressions of the facts surrounding the shooting, handwritten comments on those impressions, and routine e-mails between staff. Those impressions are exactly the kind of frank

discussion that the deliberative-process privilege is designed to protect. Although the documents do contain some facts surrounding the shooting, those facts are limited and apparently can be obtained from other sources.

In *Serv. Corp. Int'l v. Cont'l Cas. Co.*, 2005 U.S. Dist. LEXIS 58649, *3 (S.D. Fla. Jul. 27, 2005), the case involved insurance coverage following desecration of a graveyard. The parties attempted to depose an assistant statewide prosecutor relating to prosecutorial decisionmaking in a prior prosecution devolving from those events. *See id*. The defendants expressly sought to inquire into the assistant statewide prosecutor's filing decision, alleging improper influence by the plaintiffs. *See id.* at *5-*6. The prosecution file had been provided, and the court disallowed the deposition. *See id.* at *11-*12. Importantly, the court wrote that

> If alternate means are not even considered before allowing the deposition of prosecutors, prosecutors could potentially be subjected to spending time involved in civil litigations that may be better spent in performing their prosecutorial responsibilities. It is not good policy for parties to automatically subpoena prosecutors, who have obtained knowledge of facts allegedly relevant to a civil lawsuit, without first exhausting alternate means to obtain the information.

*Id.* at 12-13.

In *Belniak v. Fla. Highway Patrol*, 2013 U.S. Dist. LEXIS 169966, *2 (M.D. Fla. May 7, 2013), the plaintiff subpoenaed an assistant state attorney to appear for deposition. The prosecutor objected, because it would require him to disclose privileged information and because the plaintiff could obtain the information

from other sources. *See id.* Applying the prior version of Rule 45(d)(3)(A)(iii) and (iv), the court observed that the prosecutor was the one who made the filing decision leading to a trial conducted by another prosecutor. *See Belniak*, 2013 U.S. Dist. LEXIS 169966 at *3. He had no other involvement, and the court held that the State's "interest in preserving the confidentiality of a prosecutor's filing decision," along with finding what Belniak sought to be questionable, required quashal, and prohibition from deposition. *See id.*

It is important here to outline the State Attorney's interest, which necessarily is rooted in the law he is charged to enforce. In *Eagan*, 294 So. 2d at 639, a defendant sought investigative information from the State Attorney for the Ninth Judicial Circuit and an assistant state attorney. That trial court granted the defendant's motion, holding that the prosecutors were acting in an investigative, rather than a prosecutorial, capacity, and therefore Florida's work product doctrine did not apply and they became subject to discovery as would any other witness. *See id.* at 640. That resulted in a writ from the Florida Supreme Court commanding the trial court to quash the subpoenas. *See id.*

The supreme court held that state attorneys are "constitutional officers in whom the Florida Legislature vested the duty to prosecute. Before filing an information under oath, they necessarily must conduct an investigation to determine" whether the facts sworn to are true and would constitute the charged

offense. *Id.* (citations deleted). The supreme court held that "[i]nvestigating activity is necessary to the efficient execution of a prosecutor's duty," as shown by the statutes allowing the state attorneys to employ investigators who are themselves sworn law enforcement officers. *Id.* The court observed that prosecutors must disclose information to the defendant pursuant to the criminal procedure rules, and the defendant was bound by them and could not attempt to obtain investigative information outside the discovery rules. *See id.* Since investigation is part of the prosecutor's duty, even a criminal defendant cannot obtain attorney work product as it is construed in Florida law.

As noted *supra*, Florida prosecutors are considered to be equivalent to a one-person grand jury, and therefore are clothed with the same protections as a Florida grand jury in the execution of their pre-filing investigations. *See Widener v. Croft*, 184 So. 2d 444, 445-46 (Fla. 4th DCA 1966). Florida grand juries are permitted to create reports, known as presentments. *See* § 905.165 Fla. Stat. (2025). In Florida, it is not permissible to "go behind" an indictment or presentment to review evidence presented or make additional findings of fact. *See Moore v. 1986 Grand Jury Rep't. on Pub. Housing*, 532 So. 2d 1103, 1105 (Fla. 3d DCA 1988)(a grand jury's factual findings in a presentment are not subject to reversal); *see also Murray v. State*, 3 So. 3d 1108, 1109 (Fla. 2009)(courts may

not consider the sufficiency of information underlying a charging document when considering a motion to dismiss).

These authorities are relevant because the illustrate the public policy followed for many years in the State of Florida, which is to protect the deliberative process of its prosecutors, even when a public record document results therefrom. In Florida, one may not "go behind" such documents. Here, the chilling, behavior-altering effect upon all prosecutors by allowing this wide-ranging fishing expedition is obvious. Plaintiff wishes to probe into a prosecutor's mental processes for his use in a civil action, because he wishes to know the deliberative process behind a letter of admonishment that the State Attorney wrote to the Lakeland police chief. To do that would discourage open, frank communications between prosecutors and police, against public policy, for fear that those communications will later be explored in civil actions. Additionally, allowing the chief prosecutor of the jurisdiction to be examined for his decisionmaking process in a criminal case will chill interactions between all prosecutors and victims of crime in Florida. Article I, § 16(b) of the Florida Constitution awards victims the right to consult with the prosecutor regarding disposition. Should this case open the door to communications between the victim and the prosecutor being used in a civil trial, this will chill victims from exercising their right to be heard.

Here, it is plain what Plaintiff seeks: The mental impressions and decisionmaking process of the Tenth Circuit State Attorney leading to the letter attached as Exhibit B. Plaintiff is not satisfied with what the letter sets out; rather, he only can be interested in the deliberative process behind the letter; specifically, what factors motivated the State Attorney to write it. In essence, Plaintiff seeks to "go behind" a presentment of a one person grand jury, something prohibited in Florida law, to invade the deliberative process protected in Federal law. And he has made no effort whatsoever known to the State Attorney to obtain that which he seeks regarding the actual information and investigation leading to that letter other than through the State Attorney himself. The Court should not allow a massive invasion of the deliberative process privilege and the concomitant damage to the criminal justice process throughout the state, only for Plaintiff to discover hearsay which the Court is bound to rule inadmissible under Fed. R. Evid. 803.

## C. Plaintiff Improperly Seeks Opinion Work Product

The final reason that the Court should quash this subpoena and enter its protective order prohibiting the State Attorney's deposition is the privilege afforded in federal law for opinion work product. Rule 26(b) involves by its language the parties to a lawsuit, and the Tenth Circuit State Attorney is not a party, so Rule 26(b) does not apply to him. *Compare* with Rule 26(c)(1), which

allows "any person from whom discovery is sought" to move for a protective order. But federal opinion work product protections cut more broadly than Rule 26(b) provides.

"[T]he work product doctrine as articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), is broader than Rule 26(b)(3)." *Abdell v. City of New York,* 2006 U.S. Dist. LEXIS 6614, *12 (S.D.N.Y. Sep. 14, 2006)(citation to *Hickman* cleaned up). Rule 26(b)(3) protects documents and tangible things, <u>not</u> the intangible mental processes of an attorney. That "cannot be compelled." *Abdell*, 2006 U.S. Dist. LEXIS 66114 at *13, *citing among other decisions United States v. 266 Tonawanda Trail*, 95 F.3d 422, 428 n.10 (6th Cir. 1996) (as to information not memorialized in tangible form, *Hickman* applies, not Rule 26(b)(3)).

Classic *Hickman* work product protection encompasses a systemic interest in three things: (1) not altering attorney behavior by encouraging secrecy, against the public interest[2]; (2) preventing sloth by opposing counsel; and (3) preventing disruption of ongoing litigation. *See Abdell*, 2006 U.S. Dist. LEXIS at *14-*15. Basically, the doctrine exists because

> [i]n performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he . . . prepare his legal theories and plan his strategy without undue and needless interference.

---

[2] This classically has to do with refusing to make notes for fear that they will later be discoverable. *See Abdell*, 2006 U.S. Dist. LEXIS 66114 at *14.

*Hickman*, 329 U.S. at 510-11. And there is no waiver of work product protection for discussions such as those at issue here in Exhibit B; where a "disclosing party is allied in interest or shares litigation objectives with the third party," waiver of work product privilege is not found. *See Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002).

The State Attorney objects to his letter to Chief Taylor being used as a vector to invade his work product privilege, as the chilling effect to all Florida prosecutors attending therefrom is plain. Prosecutors will refuse statewide to adhere to their duties to ensure the quality and integrity of criminal investigations, for fear that their work later will be used in civil litigation to probe their decisionmaking. It will chill the free flow of discussion and information between prosecutors in an office, as well as between law enforcement and the public prosecutor. This, the Court should not countenance. Plaintiff's subpoena should be quashed, and Plaintiff enjoined from deposing the Tenth Circuit State Attorney. Plaintiff should, at the least, exhaust less restrictive options.

**WHEREFORE**, this Court should **quash** Plaintiff's subpoena served upon the Tenth Circuit State Attorney, and enter its protective order prohibiting his deposition.

## Certificate of Service and Local Rule 3.01(g) Certification

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was provided to Counsel for Defendant, Mr. Mauricio Padilla, Esq., by electronic service on this 26th day of June, 2026. **I FURTHER CERTIFY** that pursuant to U.S. District Court, Middle District of Florida, Local Rule 3.01(g), undersigned counsel conferred with Mr. Padilla in a good faith effort to resolve the issues raised herein. The parties were not able to resolve the matter and Plaintiff opposes the motion.

*/s/ Douglas A. Wyler*

_____

Douglas A. Wyler, Esq.
Fla. Bar No.: 119979
Wyler Law Firm
961687 Gateway Blvd, Ste 101-L
Fernandina Beach, FL 32034
(904) 261-3690
doug@wylerlawfirm.com

*Counsel for State Attorney, Brian W. Haas*